Little Rock, Mississippi River and Texas Railway Company v. Glidewell.

LITTLE ROCK, MISSISSIPPI RIVER AND TEXAS RAILWAY COM-
PANY v. GLIDEWELL.

39    487
f89   221
f90   528
f90   529

1. RAILROAD: *Negligence: Misdelivery of goods, mistake, etc.*

A sued a railroad company for the loss of goods. The company pleaded that at the time the goods were transported it was not engaged in the carrying business, its road not being fully opened for traffic, and that its servants were not authorized to contract for their carriage. *Evidence:* That the road was in process of construction; the company had no agent at the station where the goods were received, but it was in the habit of carrying for pay, goods and passengers on flat cars in a construction train over the completed part of the road. That the conductor received the goods properly marked, and at the terminus they were delivered to a stranger by mistake, and thereby lost to the owner. *Held:* That the company was liable.

2. SAME: *Same.*

A carrier is liable for goods lost by misdelivery, whether the misdelivery occurs by mistake, or by fraud or impositions practiced upon it.

APPEAL from *Desha* Circuit Court.

Hon. X. J. PINDALL, Circuit Judge.

*L. A. Pindall,* for appellant:

The railroad was not at the time a common carrier; it was in process of construction; it had no agents authorized to receive or contract for freight; it ran no trains. The employés of the contractors using the construction train had no authority to bind the company. There was no agreement or undertaking by any one to forward the freight to Collierville, Tenn.

The fact that Willard, a passenger on the train, was enabled to claim, tag and ship the freight to Hickman, was the proximate result of the carelessness of the shipper in delivering the freight to an unauthorized person without any bill of lading or contract.

Argues upon the instructions.

*Martin & Martin*, for appellee:

Appellant received goods from all who had them for shipment, and charged for transporting them, and hence was a common carrier. (*F. & M. Bank v. Ct. F. Co., 23 Ohio St.*, 186; *Fish v. Chapman, 2 Kelly*, 349, 353.) It makes no difference how they were shipped, in box or flat cars, the liabilities the same. *N. J. Ry. v. Penn, 3 Dutcher*, 100; *Redfield Law of Ry.*, vol. 2, 168.

Cite, in favor of the correctness of the instructions, *Redfield on Ry.*, vol. 2, p. 47; *Ill. Cent. Ry. v. Johnson, 34 Ill.*, 389; *Mich. S. & N. Ry. v. Day, 20 Ill.*, 375; *Northern R. Co. v. Fitching R. Co., 6 Allen*, 254; *Knox v. Rivers, 14 Ala.*, 249, 261.

The contract was to ship through to Collierville, and there was no exemption from liability beyond its own line. Even if it had contracted for non-liability beyond its line, it would be against public policy to allow it to contract for exemption from liability for losses happening from the negligence of its own employés. *R. Co. v. Lockwood, 17 Wall.*, 357; *Bank of Ky. v. Adams Ex. Co., 3 Otto*, 174.

There was an express contract to deliver at Collierville. *Nevill v. Smith, 49 Vt.*, 255.

SMITH, J.   Glidewell sued the railroad company for the value of certain goods, which it had undertaken to carry, but had negligently delivered the same to a stranger, whereby they were lost to the plaintiff. The principal defense was, that the company was not at that time engaged in the carrying business, its road not yet being fully open for traffic, and that its servants were not authorized to make contracts for the carriage of goods.

The evidence tended to show that the plaintiff had caused to be delivered to the defendant at Trippe, one of its sta-

tions, three large boxes, containing wearing apparel and household goods, and marked W. M. G., Collierville, Tenn.; that the railroad was in process of construction, and only construction trains, composed of flat cars, were run to Trippe, and the company had no local agent there. But upon such trains it was in the habit of transporting persons and property, making charges and exacting payment for its services. The conductor received the goods in question without objection and they were carried safely to Arkansas City, the eastern terminus of defendant's road. On arrival there, freight charges were demanded and received of one Milliard, a passenger on the same train, who was going to Hickman, Kentucky. The railroad agent supposed that he was the owner, and he paid the charges under the misapprehension that they were demanded on account of three trunks he had with him, or because it was necessary in order to get possession of his own baggage. However, he afterwards distinctly informed Outlaw, the company's agent at Arkansas City, that the three boxes did not belong to him, and separated them from his goods. He employed the company's agent to superintend the shipment of his goods to Hickman, and the three boxes were put aboard the steamboat as part of them, the mistake not being discovered until they reached Hickman. Then Milliard directed the clerk of the wharf-boat to reship the three boxes to Arkansas City, but the boat refused to carry them back unless the freight on them was prepaid. The clerk then wrote to Outlaw that the boxes were at Hickman and subject to his orders; but Outlaw disclaimed all knowledge of them. They were burned shortly afterwards upon the wharf-boat.

The case was submitted to a jury under appropriate instructions, and they returned a verdict for the plaintiff.

Little Rock, Mississippi River and Texas Railway Company v. Glidewell.

**1. NEGLI-**
**GENCE:**

**Misdelivery of goods by railroad company.**

**Mistake.**

The defendant, by reception of the goods under the circumstances above stated, incurred the responsibility of a common carrier. It undertook, for a reasonable reward, to carry the goods from Trippe to the eastern end of its line. It was not bound to forward them to Collierville. For, although a railroad company may by contract, express or implied, bind itself to transport persons or property beyond the line of its own road; yet no special contract of that tenor and effect is here shown and none will be implied, as it was not within the scope of the conductor's apparent authority. *Railroad Co. v. Pratt, 22 Wall., 124; Perkins v. P. S. and P. R. R. Co., 47 Me., 595; Lock Co. v. Railroad, 48 N. H., 355; Grover & Baker Sewing Machine Co. v. Mo. P. Ry. Co., 70 Mo., 672.*

**2. SAME:**

But the carrier's duty is not alone to carry safely, but also to deliver safely. He delivers goods at his peril. To deliver them to any other than the rightful owner is a violation of his contract, which the law treats as equivalent to a conversion. Nor is a misdelivery excused because it was an innocent mistake, or the result of a fraud or imposition practiced upon the carrier. *Stephenson v. Hart, 4 Bing., 486; Duff v. Budd, 3 Brod. & Bing., 177; Deverue v. Barclay, 2 B. & Ald., 702; Powers v. Myers, 26 Wend., 591; McEnter, N. J., Steamboat Co., 45 N. Y., 34; Price v. O. & S. Ry. Co., 50 ib., 213; Winslow v. V. & M. R. Co., 42 Vt., 700; Meyer v. C. & N. W. Ry. Co., 24 Wis., 566; Am. Express v. Fletcher, 25 Ind., 492; Jeffersonville R. Co. v. Cotton, 29 ib., 498; Lou. Ex. Co. v. Cook, 44 Ala, 468; Houston R. Co. v. Adams, 49 Texas, 748.* Here the delivery was to a stranger, under circumstances of negligence.

Nor is the company discharged from liability because Glidewell did not, in person, or by his agent, claim the goods at the end of the transit, nor because the consignee was unknown. It should have stored the goods

in its depot, giving the party entitled a reasonable time to call for and identify them. Or perhaps it might have freed itself from further responsibility in the matter by depositing the goods for and on account of the true owner, in the warehouse of another, or in some other place where they would be reasonably safe and free from injury. *Story on Bailments*, 8th ed., pp. 543, 545; *Blunenthal v. Brainard*, 38 Vt., 402; *Fisk v. Newton*, 1 Denio, 45.

Affirmed.