CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*

PFEIFER.

Opinion delivered May 24, 1909.

1. CARRIERS—RECEIPT OF FREIGHT—EVIDENCE.—In an action against a carrier for nondelivery of a box of freight, evidence that defendant's waybill and expense bill showed that the box was received by it, and that it collected the expense bill from plaintiff, was sufficient to go to the jury upon the question whether defendant received the box or not. (Page 527.)

2. SAME—DUTY AS TO CARRIAGE AND DELIVERY OF FREIGHT.—A carrier is responsible, not only for the safe carriage of freight against everything except the act of God or a public enemy, but also for its delivery to the proper person; and a misdelivery of the freight growing out of mistake, fraud or imposition upon the carrier will not relieve it from liability. (Page 528.)

3. SAME—EFFECT OF DELAY IN CARRIAGE OF FREIGHT.—A carrier's failure to deliver goods within a reasonable time constitutes merely a breach of contract, rendering the carrier liable for damages incurred by reason of the delay; but the owner cannot refuse to accept the goods on account of the unreasonable delay in the carriage and sue for a conversion. (Page 528.)

4. SAME—LIABILITY FOR NONDELIVERY OF GOODS.—Where, after a month's delay, freight is tendered to the owner, who declines to receive it, the railway company should store the goods and keep them until called for, and if upon the trial it fails to produce them it will be liable as for conversion. (Page 529.)

5. APPEAL—WHEN INSTRUCTIONS HARMLESS.—When the judgment appealed from is clearly right, it will not be disturbed, even though erroneous instructions were given to the jury. (Page 531.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

*Thomas S. Buzbee* and *G. A. McConnell,* for appellant.

1. In the face of positive proof, which amounts almost to mathematical demonstration, the jury were not justified in disregarding the evidence. 40 Ark. 168. There was no evidence to support the verdict. 34 Ark. 632.

2. Plaintiff could not refuse to accept the goods and then sue for their value. Hutchinson on Carriers, Vol. 2, (3 Ed.) § 651 (328); 3 *Id.* § 1365, (770 d.) ; 44 Ark. 439.

3. The measure of damages is the difference between the

actual market value of the goods on the day they should have been received if they had been transported within a reasonable time and their actual value on the day they were tendered to plaintiff at Little Rock. 46 Ark. 485; 73 *Id.* 112; 17 Fed. 482; 13 *Id.* 330; 74 Ark. 358; Hutch. on Car. (3 Ed.) § 1366 (771).

*J. H. Harrod,* for appellee.

1. The testimony simply sustains the verdict. It was only necessary to prove that the carrier received the goods and that it lost them.

2. The allegations that the goods were *received* and *lost* support a recovery for the value of the goods.

FRAUENTHAL, J. The plaintiffs, Albert Pfeifer & Bro., instituted this suit against the defendant, the Chicago, Rock Island & Pacific Railway Company, and in their complaint alleged that on or about October 1, 1907, they purchased from Edward Miller & Company two packages of electric fixtures for electroliers, and delivered same to the New York, New Haven & Hartford Railroad at Meriden, Connecticut, to be carried over its own and connecting lines of railroad to Little Rock, Arkansas, and there to be delivered to plaintiffs; that the two packages of fixtures were delivered to and received by the defendant as the connecting carrier; and that the defendant lost one of the packages and failed to deliver same to plaintiff; that this package contained a part of the electric fixtures, and was of the value of $67.43, for which sum they sought judgment against defendant. They recovered judgment against the defendant in the court of a justice of the peace, and the defendant took the cause by appeal to the circuit court; and in that court a trial was had before a jury, who returned a verdict for $67.43 in favor of the plaintiffs. And from the judgment entered on said verdict the defendant appeals to this court.

The defendant filed no written answer in this case; but it contends that it did not receive the package of goods, for the value of which this suit is brought; that about a month after the shipment was made this package of goods was tendered to plaintiffs at Little Rock, Arkansas, and they refused to accept it; that for these reasons the defendant is not liable to plaintiffs; and, in event there is any liability on its part, such liability is for

an amount only which would be the difference between the value of these goods at the time they should have been delivered and their value at the time they were tendered to plaintiffs at Little Rock, Arkansas.

Before the plaintiffs can recover herein against the defendant, it is incumbent upon them to prove that these goods were delivered to and received by the defendant. That issue was presented to the jury by an instruction given upon the part of the defendant in which the court said: "You are instructed that if you find from the evidence that the goods in question were never delivered to the defendant at Memphis by the connecting carrier, your verdict will be for the defendant."

The jury, by their verdict, found that the goods were delivered to the defendant, and it is contended that there is not sufficient evidence to sustain that finding.

The evidence tended to prove that the entire shipment of electric fixtures were packed in two packages, one a barrel and the other a box, and that these two packages were entered by the initial carrier upon one way bill, and were also entered on one expense bill. They were shipped from Meriden, Connecticut, on the same day in October, 1907, and were transported to Memphis, Tennessee, at which point the defendant is a carrier connecting with the lines of carriers from points in Connecticut, and the defendant is a carrier over its own line of railroad from Memphis, Tennessee, to Little Rock, Arkansas. On October 15, 1907, the defendant presented to the plaintiffs its expense bill for the freight for the carriage of these two packages of goods from Meriden, Connecticut, to Little Rock, Arkansas; and on this bill were the two packages, the barrel and the box, and the plaintiff paid to the defendant the charges for the transportation of the barrel of fixtures and the box of fixtures; and received from the defendant the receipted expense bill upon which were the two items. Thereupon, on that day, the defendant delivered to the plaintiffs the barrel of fixtures, but did not deliver the box of fixtures. An employee of the Merchants' Transfer Company, in conjunction with one of the clerks of defendant, made search for this box at the freight depot of defendant, but failed to find it. This employee had had an experience of several years in the

handling and delivery of goods at and from the depot of defendant to its patrons in the city of Little Rock. He testified that he saw the way bill of defendant for these goods, and that the two packages appeared thereon, and that around both items were certain check marks or circles which, according to the conduct of the business at defendant's office, indicated that both the packages, barrel and box, had been received at Little Rock, Arkansas, by defendant.

Upon the part of the defendant, the evidence tended to show that, about 30 days after the defendant had delivered to plaintiffs the barrel of fixtures, another railroad company operating in Little Rock, Arkansas, the St. Louis, Iron Mountain & Southern Railway Company, claimed to have at its freight room a box directed to plaintiffs, and presumably the box of fixtures involved in this case, and offered same to plaintiffs, which they refused to accept. But there is no testimony indicating when or from whom this latter company received the box of goods. There is no testimony tending to show that this latter company received this box of goods at Memphis, Tennessee, or from some carrier entering Memphis from the east and a connection of the initial carrier. So far as the testimony in this case appears, it may be that the St. Louis, Iron Mountain & Southern Railway Company received this box of goods from the defendant through mistake or otherwise, at Memphis, Tennessee, or at Little Rock, Arkansas, after its shipment over defendant's line of railroad. However that may be, the evidence is sufficient to justify the jury in finding that the box of fixtures was actually delivered to and received by the defendant at Memphis, Tennessee; and the fact that 30 days later it was found in the possession of the other railroad company does not disprove this conclusion.

In the case of the *Union Pacific Railway Co.* v. *Hepner,* 3 Col. App. 313, it was held that an expense bill presented by the carrier's agent at the point of destination containing charges for freight on a certain lot of articles, embracing them all and sufficiently identifying them as the goods shipped by the plaintiff, indorsed "correct" by the company's agent, was sufficient to show a delivery to the company and to charge it with the loss of such articles which it failed to deliver.

In the case at bar the two packages, barrel and box, were

transported at the same time in one shipment. The defendant admits it received and transported the barrel of goods; upon its waybill and expense bill appeared both the barrel and box of goods, with notations thereon indicating that both barrel and box were received by it and carried by it to Little Rock and checked as in their possession at Little Rock. The question as to whether the defendant did receive the box of goods was a question of fact peculiarly within the province of the jury to determine. They have found that the defendant did receive same; and we cannot say that there is not sufficient evidence to sustain that finding.

Having thus received this box of fixtures for carriage, the defendant became responsible, not only for their safe carriage against all accidents except the act of God or the public enemy, but also for their delivery to the proper person. The duty imposed by law upon the carrier to deliver the goods to the proper party is absolute, and nothing will excuse a delivery to any other party. And if a misdelivery of the goods is made by the carrier, growing out of mistake or fraud or imposition on it, this will not relieve the carrier from liability. 2 Hutchinson on Carriers (3d Ed.) § 662; 6 Cyc. 472; *Little Rock, M. R. & Tex. Ry. Co.* v. *Glidewell*, 39 Ark. 487.

So that, after defendant received the goods, the fact that they were turned over to another railroad company, either through mistake or otherwise, would not relieve the defendant from making a delivery or an offer of a delivery of the goods to plaintiffs, either by the defendant company or the other company acting for it.

The evidence on the part of the defendant tended to prove that, about thirty days after the receipt by plaintiff of the barrel of goods, the plaintiffs were notified that the box of goods was in the possession of the St. Louis, Iron Mountain & Southern Railway Company, and the box of goods was then offered to plaintiff, and they refused to accept same. They claim that the delay in shipment of the goods had been so long that they purchased other goods of a like character, and so notified defendant before the box of goods was offered to them for delivery, and on this account they then refused to accept them. But the plaintiffs were not justified in refusing to accept the goods on

account of the dalay.  As is said in 3 Hutchinson on Carriers (3d Ed.) § 1372, "Delay on the part of the carrier does not constitute a conversion of the goods, no matter how long continued, so as to make him liable for their value."  The failure to deliver the goods within a reasonable time by the carrier is only a breach of the contract of carriage, and the carrier is liable for the damages incurred by reason of the delay; but the owner cannot refuse to accept the goods on account of the unreasonable delay in the carriage and sue for a conversion.  *St. Louis, I. M. & S. Ry. Co.* v. *Mudford,* 44 Ark. 439.  In the case of *Baumbach* v. *Gulf, Col. & Sante Fe Ry. Co.,* 4 Tex. Civ. App. 650, the plaintiff had a carload of lumber on one of defendant's cars which by agreement was to be delivered at a point about one mile distant where plaintiff was building a house.  The lumber was not delivered until about one and one-half months later, and the plaintiff, having in the meanwhile purchased other lumber, refused to receive same, and sued for the value of the lumber.  In that case it was held that the plaintiff should have accepted the lumber and held the defendant liable for all actual damages which he had sustained.  5 Am. & Eng. Enc. Law, 224; 6 Cyc. 449.

But the refusal of plaintiffs to accept the goods did not discharge the company from all liability for the goods.  The company still owed a duty to plaintiffs for the care of the goods.  It should have stored the goods in its depot or in some warehouse where they would be reasonably safe and free from injury.  It had no right to abandon the goods or to convert them to its own use.  In the case of *Bacharach* v. *Chester Freight Line,* 133 Pa. St. 414, it was held that, although the consignee refused to accept the goods, yet, upon a renewed demand by the consignee, if the carrier failed or refused to deliver the goods, the consignee could sue for the conversion of the goods.  *Little Rock, Miss. River & T. Ry. Co.* v. *Glidewell,* 39 Ark. 487 (490) ; 6 Cyc. 474; 2 Hutchinson on Carriers (3d Ed.) § 685.

Even if there had been charges unpaid by plaintiffs on the goods, the defendant could not dispose of same without some statutory authority or under a judicial order or legal process; and an unauthorized disposition of the goods by defendant

would amount to a conversion. 2 Hutchinson on Carriers (3d. Ed.) 889.

But in this case the undisputed evidence showed that the plaintiffs had paid to defendant all freight charges, and that therefore there were no charges due thereon so far as the plaintiffs were concerned.

In this case the evidence on the part of the defendant itself shows that after the plaintiffs refused to take the goods the St. Louis, Iron Mountain & Southern Railway Company disposed of them. Now, this latter company, in tendering the goods to the plaintiffs, was only acting for and on behalf of the defendant. If it was not, the plaintiffs were in no relation with them in the matter of these goods, and were under no duty to accept the goods from them or to treat with them. The defendant had received the goods, and if by mistake or otherwise it delivered them to the St. Louis, Iron Mountain & Southern Railway Company, it did not deliver them to the proper person, and so became liable for the value of the goods. If, acting for or in behalf of or as agent of the defendant, the St. Louis, Iron Mountain & Southern Railway Company tendered these goods to plaintiffs, the tender should, like all tenders, have been kept good to the time of the trial; and the box of electric fixtures should have been offered to plaintiffs at the trial. *Hamlett* v. *Tallman,* 30 Ark. 505; *Schearff* v. *Dodge,* 33 Ark. 340; *Cole* v. *Moore,* 34 Ark. 589; *Bloom* v. *McGehee,* 38 Ark. 329; *Kelly* v. *Keith,* 85 Ark. 30.

The disposal of these goods by the defendant or its agent was a conversion of them by it; and on account of that conversion the defendant is liable to plaintiffs for the value of these goods.

The principles of law herein announced will sufficiently indicate the respective rights and duties of the parties growing out of the delay in the carriage of these goods, and in the offer thereafter to deliver them and the refusal by plaintiffs to receive same. We do not think it necessary to review the instructions that were given or refused relative to this issue, because, whether or not it was incorrect to give or to refuse any such instructions relative to this latter issue and the measure of damages, it was not prejudicial, for the reason that upon the undis-

·puted evidence the verdict of the jury upon the whole case was ·correct.

Under proper instructions the jury found that defendant re-,ceived these goods for carriage; and the undisputed evidence ,shows that thereafter these goods were never actually delivered ˉby it or by any one for it to .the plaintiffs, the proper parties to receive same; but the undisputed evidence does show that the ,goods were disposed of by the defendant or by one holding them for or in behalf of defendant, and that thereby the goods became ·totally lost to plaintiffs. In this way the defendant became liable by way of conversion for the value of these goods. Regardless therefore, as to whether or not any of the instructions rela-·tive to the delay in the carriage of the goods, the alleged tender ·thereof thereafter to plaintiffs, and their refusal to accept them at that time, was erroneous, the finding and judgment in favor of plaintiff on the whole case is clearly right. In such case, even though some of the instructions were not correct, the judgment ·should not be reversed. ,St. Louis Southwestern Ry. Co. v. Russell, 64 Ark. 237; Hershy v. Latham, 46 Ark. 542; Burton v. ,Baird, 44 Ark. 556; Gibbons v. Dillingham, 10 Ark. 9.

The judgment is affirmed.