EQUITABLE POWDER MANUFACTURING COMPANY *v.* ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY.

Opinion delivered June 26, 1911.

1. CARRIERS—MISDELIVERY OF FREIGHT.—A carrier acts at its peril in the delivery of goods, and no circumstances of fraud or mistake will excuse a delivery to a person other than the consignee. (Page 500.)

2. SAME—WHEN ERROR TO DIRECT VERDICT.—Where there was testimony from which the jury might have found that a carrier delivered freight to a person other than the consignee, and that thereby the consignor lost the goods, it was error to direct a verdict for the carrier. (Page 500.)

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; reversed.

*Falconer & Woods,* for appellant.

1. It was error to direct a verdict for the appellee, and appellant did not waive its right to a trial by a jury because it requested a peremptory instruction in its favor.

(a) Where a plaintiff asks for a peremptory instruction, which is denied, and prays other instructions upon disputed questions of fact, he does not thereby waive his right of trial by jury. 157 U. S. 154, 39 L. Ed. 654; 210 U. S. 1, 52 L. Ed. 931; 73 C. C. A. 350; 142 Fed. 132; 138 Fed. 37; 233 Ill. 50; 13 Am. & Eng. Ann. Cases, 369; 92 Ark. 385; 122 N. Y. 652; 153 Mich. 253.

(b) Where a shipment consigned to the Wise-Moist Coal Company was delivered by a carrier without authority from the consignor to B. W. Pulling, acting for the R. E. Moist Company, and not as agent of the consignee, the carrier is liable for conversion. 2 Machen, Private Corp. 871; 1 *Id.* 380; 84 Tex. 21;

19 S. W. 300; 58 S. E. 854; 32 Ind. 376; 69 Ark. 55; 70 Ark. 10; 71 Ark. 290.

2. The court should have directed a verdict for the appellant. The rule is that "a carrier must not only carry safely, but he must deliver safely." He delivers goods at his peril. To deliver them to any other than the rightful owner is a violation of his contract, and is treated as a conversion. Nor is a misdelivery excused because it was an innocent mistake, or the result of fraud or imposition upon the carrier. 39 Ark. 487, 490; 72 Ark. 469; Hutchinson on Carriers, § 344; 50 N. Y. 213; 37 L. R. A. 177, note; 100 N .Y. 491; 14 S. W. 604; 42 Vt. 700; 6 Cyc. 472; 2 Hutchinson on Carriers, § 699; Moore on Carriers, 152.

*W. F. Evans* and *B. R. Davidson,* for appellee.

The shipment was made on a telegram from Pulling, the consignor, intending that it should be delivered to him. The order had been solicited from him, the billing was mailed to and received by him, and forwarded to R. E. Moist, who was president of both companies. This was a legal delivery to the agent of the consignee. 1 O. C. D. 145; 9 Ia. 487; 35 S. W. 748; 27 Mo. App. 360; 135 Mass. 278; 46 Am. Rep. 467; 61 Ala. 158.

If Pulling had authority to represent the consignee, there was no misdelivery. 17 Ill. App. 325; 6 Cyc. 468-471. Delivery to the one who is the real agent of the consignee is sufficient. 6 Cyc. 470, 471; 2 Hutchinson on Carriers, § 674. Delivery is complete when the agent gives his receipt for the goods. 50 S. E. 132. Having acted as agent for these parties for years, no express authority to Pulling to receive the shipment was necessary. 67 Ark. 542; 31 Cyc. 1219 and cases cited; *Id.* 1231, 1232, 1235, 1236.

If goods are delivered to the person ordering, the carrier is not liable, even though the purchaser intended a fraud on the one from whom the purchase was made. 157 Fed. 987; 15 Fed. 826; 110 Mass. 26. The two corporations were the same, though technically different. 65 S. W. (Ark.) 929; 119 S. W. (Ark.) 282.

HART, J. This is an appeal by the Equitable Powder Manufacturing Company from a judgment upon a directed verdict in a suit brought by it against the St. Louis & San Francisco Railroad Company for the value of a car of powder, which was alleged to

have been converted by the railroad company. The facts are substantially as follows:

On November 18, 1908, appellant delivered to appellee, at Fort Smith, Arkansas, a car of powder, consigned to the Wise-Moist Coal Company at Henryetta, Okla., but intended for the Wise-Moist Coal & Lumber Company, of whose financial standing appellant had made investigation, and whose credit was good.

The order for the car was a telegram dated November 17, 1908, signed by B. W. Pulling, whom Mr. Bedwell, agent for appellant, believed to be the agent at Henryetta of the Wise-Moist Coal & Lumber Company. This company, however, had its principal office at Oklahoma City, and had withdrawn from business at Henryetta on September 1, 1908. Prior to this time the Wise-Moist Coal & Lumber Company had been purchasing the entire output of a certain coal mine operated at Henryetta and known as the Worden mine. The coal when purchased was resold and shipped by the Wise-Moist Coal & Lumber Company to the purchasers at various points. R. E. Moist was president of the Wise-Moist Coal & Lumber Company, and B. W. Pulling was the general agent of the company at Henryetta. The R. E. Moist Company, a corporation of which R. E. Moist was also president, and owner of nearly all the stock, began to operate the Worden mines on September 1, 1908. That company sold the coal it mined, and thereafter the Wise-Moist Coal & Lumber Company, as above stated, ceased to do business at Henryetta; and this fact was known to the agent of the appellee railway company at that place. Letters containing orders for coal were sent there after September 1 to the Wise-Moist Coal & Lumber Company, and were opened by Pulling, who was the general agent of the R. E. Moist Company. The orders were filled, and the coal was shipped out in the name of the R. E. Moist Company. Both companies were incorporated. Pulling was employed by the R. E. Moist Company, and received no salary from the Wise-Moist Coal & Lumber Company. Pulling receipted for the shipment of powder in his own name, and says that the two corporations were so closely identified in interest that the matter of which company he was receiving it for did not enter his head. Pulling admits that he had no authority conferred upon him by the Wise-Moist Coal & Lumber Company to act for it after September 1, 1908. He

stated that R. E. Moist directed him to take charge of his affairs there, and beyond that he had no authority. He further stated that he ordered the powder for the R. E. Moist Company, and that the powder was used by that company after it was received. The company became insolvent, and was unable to pay the purchase price of the powder.

A carrier acts at its peril in the delivery of goods, and no circumstances of fraud or mistake will excuse a delivery to a person other than the consignee. *Little Rock, Miss. Riv. & Tex. Ry. Co.* v. *Glidewell,* 39 Ark. 487.

This is conceded to be the law by appellee, and the judgment of the lower court is sought to be upheld on the ground that the undisputed evidence shows that Pulling had authority to act for the consignee in receiving the goods, and that he did so act. We think, however, this question should have been submitted to the jury. It is true that Pulling says that he had authority from R. E. Moist to take charge of his affairs at Henryetta, and that R. E. Moist was president of the Wise-Moist Coal & Lumber Company, to whom the powder was consigned. He further says that the two corporations were so closely identified that it never entered his head for which one he was receiving the powder. On the other hand, he says that the Wise-Moist Coal & Lumber Company had ceased to do business at Henryetta for two months before the powder was ordered (and this fact was known to the agent of appellee at that point.) Pulling purchased the powder for the R. E. Moist Company, and it was used by that company. From these facts a jury might have found that it was delivered to Pulling as agent for the R. E. Moist Company.

For the error in directing a verdict for appellee, the judgment will be reversed, and the cause remanded for a new trial.