CHICAGO, ROCK ISLAND & PACIFIC RAILRWAY COMPANY

*v.* NUESCH.

Opinion delivered July 3, 1911.

CARRIER—LIABILITY FOR DELAY IN DELIVERING FREIGHT.—A common carrier
is liable in damages for negligent delay in the transportation of
freight; but the owner can not, on account of unreasonable delay in
the carriage and delivery, refuse to receive the goods and sue as for
a conversion.

Appeal from Hot Spring Circuit Court; *W. H. Evans,*
Judge; reversed.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellant.

Appellee's only excuse for not accepting the potatoes and
for abandoning them was the alleged negligent delay of appellant
in delivering them at destination. This is not shown in the proof.
There is no evidence to show how long it should take to carry
and unload a shipment of potatoes from Malvern to Little Rock,
nor even any testimony as to the time customarily taken to trans-
port goods between these points. Hutchinson on Carriers, (3
ed.) § 652; 83 S. W. 82. A carrier can not be charged with con-
version for a delay, however long, until the goods have been
demanded of the carriers and their delivery refused. Moore on
Carriers, 207, 208; 46 S. E. 923; Hutchinson on Carriers, 775,
§ 1372.

It is the duty of the consignee to go to the depot of the
carrier and demand the goods, and this duty is not discharged
by going when he thinks the goods should have arrived and
demanding them and then refusing to go back and absenting
himself without advising the carrier where he may be notified
when the goods do arrive. 81 S. W. 826; 6 Am. Rep. 28; 133
S. W. 295; 93 Ark. 430. When, on the arrival of the car, Davis
did not call for the potatoes, appellant pursued the only proper
course in notifying the consignor of their arrival at destination.
Hutchinson on Carriers, § 723; 93 Ark. 430; 104 S. W. 1072.

*E. H. Vance, Jr.,* for appellee.

WOOD, J. Appellee on November 21, 1910, shipped 120
bushels of sweet potatoes from Malvern to Little Rock, Ark..

over appellant's road, consigned to one M. Davis. Davis lived at Malvern, and was employed by appellee to come to Little Rock to receive the potatoes as his agent, and there to sell same at retail prices just before Thanksgiving day. Davis arrived at Little Rock on November 22, 1910. He testified as follows:

"As soon as I got off the train, I went to the depot, and presented my bill of lading, and asked if the potatoes were there, and they said no, and said for me to come around about one o'clock. I went away and came back, and they said they were not there; and I waited all the afternoon, and they didn't come. Next morning I went back, and they were not there, and they telephoned around, and said they must be at Biddle or Argenta, and that they would get them over and unload them. In the afternoon they gave me the number of the car and told me to look for it, and I did look for it, but couldn't find it. About 3 o'clock I saw the paymaster, and he said the car was there, and I paid the freight, $11.52, and went down and presented my expense bill. And the men looked all around on the inside and outside, and couldn't find them anywhere; and I went back to the cashier, and said I couldn't find the potatoes, and couldn't find the car that they were shipped in. The cars were four or five deep all around there, and I looked through all of them; and I demanded my money back, and he refunded it to me, and gave me back the bill of lading. When I left the depot on the evening of the 23d I said: 'You will have plenty of potatoes for Thanksgiving; I am going home.' I came home on the night of the 23d, and didn't go back any more. When I left, I didn't leave any instructions where to notify me when the potatoes came in. I left no instructions as to the delivery of the potatoes. I was not in town when Mr. Nuesch got his telegram about the potatoes, but he showed it to me afterwards. I do not remember what the telegram contained, but Mr. Nuesch told me that it was to the effect that the potatoes were there. That was Friday after Thanksgiving day.

Appellee then introduced in evidence the following telegram: "Little Rock, 11-25. 120 sks. sweet potatoes consigned M. Davis received here November 22."

Appellee testified as to the shipment on Monday, the 21st day of November, 1910, and as to the condition of the potatoes,

etc.; but, as no question is made here as to the value of the potatoes in the event of recovery, it is unnecessary to set out the evidence in regard to that.

Appellee testified that he received the telegram on Friday evening, November 25, just before sundown, notifying him that the potatoes were at Little Rock. That was the first notice he had. He kept the seventh day, and could not have anything to do with them. Next day was Sunday, and other people kept that day and wouldn't work. When he got the telegram, he told the railroad company that he wouldn't have anything to do with it. That he had done all he could. He told Mr. Rodgers, the railroad agent, that the railroad could take the potatoes and do whatever they pleased with them, that he would not have anything more to do with them. He never had demanded the potatoes from the railroad company since November 23d, when Mr. Davis was there. He did not want the potatoes any more.

The above presents substantially the evidence upon which appellee predicated his suit against the appellant company for conversion of the potatoes. The appellant denied that it had converted the potatoes, and denied liability. It set up that the potatoes were safely and promptly carried to destination, that they were unloaded at the freight depot at Little Rock on the morning of the 24th of November, and that they were then and there subject to the orders of the consignee or any one else who was entitled to the possession of them; that appellant did not know where the consignee Mr. Davis could be found, except that he had returned to Malvern; and that it had notified appellee by wire that the potatoes were subject to delivery and requested information as to what to do with them; and that in response to the wire it was advised by appellee that he would not accept them; that the freight charges were $11.52, and that no part thereof had been paid.

The cause was submitted to the jury, and appellee obtained a verdict in his favor in the sum of $78.48, being $90 for the price of the potatoes less the sum of $11.52, the amount of the freight. From this judgment the appellant prosecutes this appeal.

The undisputed evidence in the case shows that there was no conversion of the goods, and the court should have granted

the prayer of appellant for a peremptory instruction to find for the appellant on that issue. .

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Mudford,* 44 Ark. 439, this court said: "A common carrier is liable in damages for a negligent delay in the transportation of property. But the owner can not, on account of unreasonable delay in the delivery, refuse to receive the goods and sue as for a conversion." *Chicago, R. I. & P. Ry. Co.* v. *Pfeifer,* 90 Ark. 524. See also *McCrary* v. *Chicago & Alton Ry. Co.,* 83 S. W. 82.

In *St. Louis, I. M. & S. Ry. Co.* v. *Townes,* 93 Ark. 430, this court quotes from Mr. Hutchinson on Carriers at section 733 as follows: "It is the duty of a consignee to be on hand and ready to receive the goods. He can not absent himself and thus put it out of the power of the carrier to make delivery to him and hold him, during his absence, to the extraordinary care of the goods required of a carrier. If, therefore, he be absent when the carrier is ready to deliver the goods, and has left no agent known to the carrier to whom delivery can be made for him, or to whom notice can be given of their arrival, the carrier becomes at once a mere warehouseman of the goods."

When appellee's agent, Davis, failed to call for the potatoes after they had arrived at Little Rock on November 24, appellant pursued the proper course in notifying the consignor that the potatoes were at their destination and unclaimed. The consignor and owner of the potatoes, having ignored this notice, and indicated that he no longer wanted the potatoes, would not have anything further to do with them, he is in no attitude to complain of appellant for the course it pursued after it had received such notification. It was the duty of appellee to have called for his potatoes, and if he was damaged on account of any delay in the shipment to have sued appellant for any damages that might have resulted to him on account of such delay.

In *Gulf, C. & S. F. Ry. Co.* v. *Somerville Merc. Agency,* 104 S. W. 1072, in a case where the facts were similar, the court said: "The object of the suit was to recover the value of goods that were never delivered, and it clearly appeared that the goods arrived at Somerville, Texas, the place of their destination, on January 1, 1905, and that appellee was notified of their arrival and requested to bring over the invoice and check them up. Ap-

pellee did not. receive the goods or make any effort to get them from the depot. The notification of appellee by the appellant constituted a delivery of the goods, and, no matter how great the delay may have been, appellee should have received the goods and sued for damages resulting from the delay. The delay of the carrier did not constitute a conversion of the goods, no matter how long continued, so as to render it liable for the value of the goods; and appellee should have received them when tendered."

That principle rules this case. The complaint, however, might be held sufficient to have stated a cause of action, although defectively, as for delay, and therefore the court will so treat it and allow appellee, if he so elects, to have judgment here in the sum of $30, provided he pays the cost of this appeal; same being the sum for which appellant offered to confess judgment in the court below. If, however, appellee does not indicate his desire to enter a remittitur of the judgment he has obtained down to that sum within fifteen days, the judgment will be reversed and the cause will be remanded for a new trial.