ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* THE SCARBOROUGH COMPANY.

Opinion delivered November 2, 1914.

1. CARRIERS—DELIVERY TO OTHER THAN CONSIGNEE—AUTHORITY FROM CONSIGNEE—LIABILITY TO SHIPPER.—Where a consignment of goods is on an open bill of lading, a delivery either to the consignee, or, to another upon the latter's direction or authority, even without a surrender of the bill of lading, as required by the statutes, would impose no liability on the carrier in favor of the shipper.

2. CARRIERS—LIABILITY TO CONSIGNEE—FREIGHT.—A delivery of goods shipped, by the carrier which is valid as to the consignee, is a defense to the carrier as to all persons.

3. CARRIERS—FREIGHT—REFUSAL OF CONSIGNEE TO ACCEPT—DUTY OF CARRIER—DELIVERY.—When the consignee of a shipment of goods refuses to accept the same, it becomes the duty of the carrier to store the goods and keep them safely for the consignee or the true owner.

4. CARRIERS—FREIGHT—DELIVERY—INSTRUCTIONS BY CONSIGNEE.—Plaintiff shipped goods for one P. to the V. B. Trust Co. Upon arrival, the trust company told the carrier the goods were for P. *Held*, an instruction that this, as a matter of law, amounted to a direction to the carrier to deliver the goods to P. was properly refused.

5. CARRIERS—FREIGHT—REFUSAL TO ACCEPT.—A mere refusal to accept by the consignee of goods shipped will not justify the carrier in delivering the goods to some one else.

Appeal from Crawford Circuit Court; *Jeptha H. Evans*, Judge; affirmed.

*Thos. B. Pryor* and *Vincent M. Miles,* for appellant.

1.   The company had no notice of any draft.   The goods were shipped on an open bill of lading, with no conditions as to notice, draft or other conditions.   The instructions asked should have been given.   The trust company, as the agent of the shipper, could not stand by with full knowledge of all the facts, essential to protect defendant, and then after a year advise it of a wrong delivery.   33 Ark. 465.

*Sam R. Chew,* for appellee.

1.   Under the state of facts proven there was no way of escape from liability by appellant because it was its duty to deliver to the consignee or some one authorized by it to receive the shipment.   2 Hutch. on Car. (3 ed.), § § 662-669; 39 Ark. 487; 90 *Id.* 524.

*Pryor & Miles,* in reply.

If the carrier is misled by some act of the shipper or consignee as to the person to whom delivery should be made, the carrier will be excused.   6 Cyc. 473, and notes; 58 N. H. 521; 1 Moore on Carriers, § 6.

McCulloch, C. J.   Appellee shipped from its place of business in Indianapolis to the Van Buren Trust Company, of Van Buren, Arkansas, over appellant's road, two boxes containing maps aggregating in value the sum of $450.   Appellee had contracted with one C. D. Paynter for sale of the maps at the price of $450 and drew a draft on the latter through the Van Buren Trust Company for the price, and the maps were consigned by appellee to the Van Buren Trust Company to hold until the draft should be paid.   The shipment was on open bill of lading without providing for notice to be given to Paynter or any other person, and without any notice that the bill of lading was to be delivered to Paynter or any one else on payment of the draft.   Appellant's agent at Van Buren delivered the maps to Paynter upon the payment of the freight bill by him, and appellee instituted this action to recover the unpaid balance of the price of the maps.   Paynter made only a small payment on the

bill and then absconded. Appellant defended on the ground that the maps were delivered to Paynter upon the direction or with the consent of the consignee, the Van Buren Trust Company, and that for that reason there was no misdelivery, and neither the consignee nor the shipper can recover the value of the maps.

According to the uncontradicted testimony in the case, appellant's agent turned the two boxes over to a transfer company in Van Buren for delivery to the consignee, but the latter declined to accept the shipment and the transfer company returned the boxes to appellant's agent at the depot. At first there was an error made by appellant's cashier or bookkeeper in billing out the consignment as "mops" instead of "maps," but that was subsequently corrected and the consignee's attention was called to the fact that the boxes contained maps. There was one or more conversations between appellant's agent at Van Buren and the cashier of the Van Buren Trust Company, who, the evidence shows, was the only person authorized to act for the trust company; and appellant claims that in one of those conversations authority was given by the cashier of the trust company to make the delivery to Paynter. Mr. Fox, appellant's agent, who conversed over the telephone with the cashier of the trust company, testified that the latter, after refusing to accept the consignment, stated that the maps belonged to Paynter and that Paynter would call later for them. He stated that in a subsequent telephone conversation with some one at the trust company's place of business he was directed to deliver the boxes to Paynter. He was not positive that these conversations were with Mr. Bryan, the cashier, but said that it was somebody at the trust company's place of business proposing to speak with authority. The jury were warranted in finding that all of these conversations were with Mr. Bryan, but there is a sharp conflict between the testimony of Fox and Bryan, as to what was said in those conversations. Bryan denied that he authorized the delivery to Paynter. His version of the transaction was that when the

railroad agent informed him over the telephone that the box contained maps he replied that they had nothing to do with any maps, and added: "I told them I thought Mr. Paynter was expecting some."

It does not appear from the testimony in this case whether or not the bill of lading was forwarded to the Van Buren Trust Company attached to the draft; indeed, the testimony is not explicit on the question whether the trust company had the draft or bill of lading at the time of the conversations with the railroad agent, though the inference is that the draft was there at that time, but nothing is said about the bill of lading. It is thus seen that there was no dispute about the trust company declining to accept the consignment of maps, but there is a sharp conflict in the testimony as to what was said in the telephone conversation between Fox, the railroad agent, and Bryan, the cashier of the trust company, and whether or not the latter gave any direction or authority for the delivery of the maps to Paynter.

The state of the proof was such as to call for a submission to the jury of the issue whether the trust company, either directly or by implication, from the statement made in the conversation, directed or authorized the delivery to Paynter. That issue was submitted to the jury by the court in the following instruction:

"Gentlemen, this case turns on a simple proposition. It is the duty of the defendant company when the goods were in their possession for delivery consigned to the Van Buren Trust Company, or to somebody whom they designated. The delivery to the trust company or to any one designated or authorized by the trust company would be a sufficient delivery. So it is not contended in this case that they delivered the goods to the trust company, although the company offered to do so, but if the company delivered to Paynter the maps by direction of the Van Buren Trust Company, then that is sufficient and the defendant is not liable; otherwise, the defendant is liable. This is the only proposition to be considered in the case. Did the defendant company deliver to Paynter

by virtue of authority from the Van Buren Trust Company so to do? If the railroad company did that, why the company is not liable here. If they delivered to Paynter without the authority or direction of the Van Buren Trust Company, why, then, the railroad company is liable.''

We are of the opinion that this instruction properly submitted to the jury the only issue in the case, and that, as the evidence was sufficient to support the finding of the jury, the verdict should not be disturbed.

(1-2) The consignment was on open bill of lading and a delivery either to the consignee or upon the latter's direction or authority, even without surrender of the bill of lading as required by the statutes of this State, would have imposed no liability on the carrier in favor of the shipper. The statute protects only a transferee of the bill of lading on such a shipment. *Nebraska Meal Mills* v. *St. Louis S. W. Ry. Co.*, 64 Ark. 169. The shipper, under such circumstances, must derive his right to sue the carrier upon such a misdelivery as would have enabled the consignee to have sued if the latter had been injured thereby, the law being that ''any delivery valid as to consignee is a defense for the carrier as to all persons.'' 1 Moore on Carriers, Chap. V., p. 211, § 6.

(3) Now, it can not be said, as a matter of law, from the undisputed evidence, that there was direction given by the consignee to deliver to Paynter, nor that the acts and conduct of the consignee's agent were such as to mislead the carrier's agent or to impliedly authorize a delivery to some other person. Those were questions of fact to be submitted to the jury. The mere fact that the consignee refused to accept the goods did not authorize the delivery to some other person, for it is the duty of the carrier to store the goods and keep them safely for the consignee or the true owner. *Chicago, R. I. & P. Ry. Co.* v. *Pfeifer*, 90 Ark. 524. The statutes of the State expressly prohibit the carrier from delivering to any one except upon surrender of the bills of lading.

Appellant requested the court to give several instructions which were correct. but the substance of those instructions was embraced in the one which the court gave of its own motion. There is another instruction, however, which appellant insists was not embraced in that instruction, and which it is argued the court should have given. The instruction reads as follows:

"If you find from the evidence in this case that Mr. Bryan was acting as cashier or agent for the Van Buren Trust Company and received notice from Mr. Fox, cashier of the railroad company, that there were some maps or mops at the depot consigned to the Van Buren Trust Company and that Mr. Bryan notified Mr. Fox that the maps were for C. D. Paynter, and that they were delivered to C. D. Paynter without any knowledge on their part, that the maps were shipped to the Van Buren Trust Company, to be delivered by it to C. D. Paynter upon the payment of a draft, and that the railroad company had no knowledge of this, or even if they did have knowledge, they were acting under the instructions of Mr. Bryan in delivering the maps to Mr. Paynter, then the plaintiff can not recover, and your verdict should be for the defendant."

(4-5) It will be readily seen that the latter part of this instruction relating to the question of the direction or authority given by Bryan to deliver the maps to Paynter is embraced in the instruction that the court gave, but the first part of the instruction was not so embraced, particularly that part which charges the jury that the carrier would not be liable if "Mr. Bryan notified Mr. Fox that the maps were for C. D. Paynter, and that they were delivered to C. D. Paynter without any knowledge on their part, that the maps were shipped to the Van Buren Trust Company to be delivered by it to C. D. Paynter upon payment of the draft." Now, in view of the sharp conflict in the testimony as to what transpired between Fox and Bryan in the conversation over the telephone, it should not have been said to the jury as a matter of law that if Bryan notified Fox that the maps

were for Paynter that would constitute authority to deliver to Paynter. Neither of the parties testified in that precise language. Fox said that Bryan, or whoever did the talking at the trust company's place of business, said that the maps belonged to Paynter, and subsequently authorized or directed him to deliver them to Paynter; whereas, Bryan testified that he merely told them that Paynter was expecting some maps. The jury might have drawn the inference even from the testimony of Bryan that, as the representative of the consignee named in the bill of lading, he consented to the delivery of the maps to Paynter; but this is not a necessary inference from that statement, and the jury might have drawn another inference from it. They might have drawn the inference that Bryan was not expressing any direction or consent on the subject but was merely refusing to accept the consignment and was leaving the railway company to act as it saw fit without any consent or authority from the consignee. Under those circumstances, the jury could have treated the conduct and statements of Bryan merely as a refusal to receive the consignment; and the law is, as before stated, that a mere refusal to accept does not justify the carrier in delivering the goods to some one else. This instruction was, therefore, misleading, and the court properly refused to give it.

Judgment affirmed.