YAZOO & MISSISSIPPI VALLEY RAILROAD CO. *v.* ALTMAN.

## Opinion delivered June 19, 1916.

1. CARRIERS—DELIVERY OF FREIGHT.—The liability of a carrier ceases upon delivery of a shipment of goods at the point of destination in accordance with the directions of the shipper, or according to the usage and custom of the trade, and an actual delivery is made when the possession is turned over to the consignee or to his duly authorized agent, and a reasonable time given him in which to remove the goods.

2. CARRIERS—FREIGHT—REFUSAL OF CONSIGNEE TO ACCEPT.—The refusal of the consignee to accept a shipment from the carrier does not discharge it from all liability and the carrier owes a duty to take care of the goods, and can not abandon them nor convert them to its own use.

3. CARRIERS—DELAY IN DELIVERY OF FREIGHT—REFUSAL OF CONSIGNEE TO ACCEPT—LIABILITY—QUESTION FOR JURY.—Where the consignee of goods shipped refused to accept the same, because of a delay in the shipment, but notified the carrier to hold the same until he communicated with the consignor, and the goods were thereafter lost, in an action by the consignee against the carrier for damages, it is a question for the jury to determine the carriers, liability, and it is error to direct a verdict for the consignee.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellee brought this suit to recover the value of two cases of shoes which it was alleged the carrier failed to deliver. From the judgment against it in the justice court the railroad company appealed, and, upon trial, the circuit court directed a verdict against it, and from the judgment thereon this appeal is prosecuted.

It appears from the testimony that appellee ordered by telegraph two cases of shoes from Geo. E. Keith & Co. of St. Louis; that they did not arrive as soon as he expected them and he stated that he told the agent of appellant if they did come to notify him and keep them until

he could take the matter up with the house. "I told the agent to keep the goods, that I would take the matter up with the company." The transfer company, which was the agent of appellee, received the goods from the carrier and took them to the store of appellee, who refused to receive them and directed that they be taken back. Appellee stated that the agent afterward told him that the goods were at the warehouse and asked what he was going to do about it, and he again told him to hold them until he could make arrangements with the consignor about it. After some little correspondence with the seller he concluded that he would have to take the goods, and notified the agent and the transfer company that he would take them and to send them up. The shipment could not be found, and was not thereafter delivered to him.

Appellant had written instructions from appellee to deliver all shipments of goods for him to the transfer company, which was employed to deliver them to his store. The manager of the transfer company stated that after the shoes were returned to the station, he saw them in the warehouse and asked the agent why they were there and had not been delivered and was told they had been refused and returned by Mr. Altman. Said he did not make the delivery and knew nothing about it and "I saw the shoes after they were returned and was told by Mr. Davis that they had been refused and returned to the depot. We had been in the habit of returning refused shipments to the depot, but I had no contract with the railroad company to that effect and they had been accepting them upon their return."

The receipt for the goods executed by the transfer company was introduced in evidence by the appellant and the manager stated that they neglected to take it up when the shipment was returned; that it was the custom when a shipment was returned to erase the name of the agent on the receipt, but it had not been done in this case. He did not know whether his agent who returned the goods to the railroad company notified it that he had delivered

the goods back to them, but he did know that the railroad agent saw the goods in the warehouse after they were returned; that they were in a place in the warehouse where goods were frequently placed near the door. Admitted that Mr. Straub's name was over the place where he saw the goods. It was the practice of the transfer company to pay the railroad company the freight charges and execute a receipt for the goods upon delivery to it and this was done in this case.

The warehouse foreman stated that he had nothing to do with the delivery of goods to the consignee, but only checked them from the cars into the warehouse; that if this shipment was returned by the transfer company to the warehouse, it did not come under his notice; that if they were returned, it would come to the notice of the agent or others.

The court refused all the instructions asked by appellant and directed the jury to find for appellee the value of the claim.

*Fink & Dinning*, for appellant.

1.   There is no evidence that two cases of *shoes* were ever delivered to the carrier. The action is in *tort*, and the burden was on plaintiff. 4 R. C. L. 916.

2.   The goods were actually delivered to the consignee. The transfer company was the agent of the consignee for delivery of all goods. 150 S. W. 1028; 4 R. C. L. 763; 90 Ark. 70; 100 *Id*. 37; 67 *Id*. 402, 406; 27 R. I. 235, 61 Atl. 695. At most the railroad was a gratuitous bailee and only liable for gross negligence. 23 Ark. 63; 6 Cyc. 522. The act of taking back the goods did not render the company liable. 42 Ark. 204.

3.   The negligence of the company was clearly one for a jury, and the court erred in directing a verdict. Hutchinson on Carriers, § 22.

*Bevens & Mundt*, for appellee.

1.   Under the facts of this case, 90 Ark. 524 is the law settling the question. Delivery was proven by the bill of lading and invoice.

2.  The transfer company was not the agent of appellee, for the carrier's agent was notified before the arrival of the goods that it would not be accepted and to keep it at the depot.  The carrier was a bailee or warehouseman of some kind and liable.  6 Cyc. 460.  The burden of showing negligence was not on plaintiff.  Hutchinson on Carriers (2 ed.), § § 259, 355.  At least a *prima facie* case of liability was shown, which was not overcome. 6 Cyc. 462; 7 L. R. A. 530; 5 A. & E. Enc. Law, 361; 17 Fed. 905; 62 Cal. 174.

3.  There was no new contract when appellee refused the goods, the carrier's duty was merely reduced to that of warehouseman, and it was proper to sue on the contract of carriage.  94 Cal. 166; 17 L. R. A. 685; 6 Cyc. 462.  On the burden of proof, see 37 Conn. 272; 9 Am. Rep. 347; 92 Ga. 801; 44 Am. St. 197; 37 Ala. 247; 79 Am. Dec. 49; 24 Ill. 466; 67 Am. Dec. 548, note.

KIRBY, J., (after stating the facts).  The undisputed testimony shows that the consignment of goods was delivered by the railway company to the transfer company, the agent of appellee, who was duly authorized to receive and receipt for all shipments to appellee, and also that upon their being taken to the store of appellee, he refused to take the goods from the transfer company, thinking he had the right to refuse to accept them from the seller because of their not arriving sooner.

Appellee stated, however, that upon the failure of the goods to arrive, within two or three days after they were ordered, he directed the agent of appellant not to deliver them but to hold the shipment until he could take the matter up with the consignor, that later when the goods were brought to his store by the transfer company, he refused to take them and directed that they be returned to the railway company.  He likewise stated that the agent afterward called him up and asked him what was to be done about it and he told him to hold them until he could make some adjustment with the seller.

The manager of the transfer company stated that he had seen the consignment in the warehouse after they had been returned by direction of appellee, and not knowing that they had ever been taken out, asked why they were there and was told that they had been refused and returned by appellee.

This witness also stated that he knew the goods were in the warehouse and that the agent had taken charge of them because the agent told him that they should not have accepted them. To which witness replied: "I told him I would not bother, so long as the goods were worth the amount of the freight he had paid on them."

(1) There is no question but that the liability of the carrier ceases upon delivery of the goods at the point of destination in accordance with the directions of the shipper or according to the usage and custom of the trade, nor that an actual delivery is made when the possession is turned over to the consignee or his duly authorized agent and a reasonable time given him in which to remove the goods. *Arkadelphia Milling Co.* v. *Smoker Merchandise Co.,* 100 Ark. 37; *Hill* v. *St. L. S. W. Ry. Co.,* 67 Ark. 402; *Arkansas Midland Rd. Co.* v. *Moody,* 90 Ark. 70.

(2) It is equally true that the refusal of the consignee to accept a shipment from the carrier does not discharge it from all liability and that it owes a duty to take care of, and can not abandon the goods or convert them to its own use. *C., R. I. & P. Ry. Co.* v. *Pfeifer,* 90 Ark. 524; *L. R. Miss. R. & Tex. Railway Co.* v. *Glidewell,* 39 Ark. 487; 2 Hutchinson on Carriers, § 685.

(3) In this instance, although the possession of the goods was in fact turned over by the railroad company to the transfer company, which was appellee's agent generally authorized to receive all shipments, it can not be said that it constituted a delivery thereof, since appellee stated that he told the agent of the railroad company before the shipment arrived that he would not receive it because of the delay and to hold the goods until he could adjust the

matter with the consignor and refused to take the goods when they were brought to his store and directed that they be returned to the railroad company. The testimony also shows that the goods were in fact returned to the depot or warehouse of appellant company with the consent or knowledge of its agent in charge.

Neither can it be said that the undisputed testimony shows there was not a delivery of the shipment since it is shown there was, but for appellee's statement that he directed the railroad agent before its arrival to hold and not deliver it. Although this statement was not contradicted, it was made by one of the parties directly interested in the result of the suit and the inferences arising from the other testimony are not altogether in accord with it. *Skillern* v. *Baker*, 82 Ark. 89.

It was a question for the jury under the circumstances of the case, and the court erred in directing the verdict.

The judgment is reversed and the cause remanded for a new trial.