NO. 7789             STATE OF LOUISIANA

ROSELAND VENEER & PACKAGE CO
                        COURT OF APPEAL
        VS

ILLINOIS CENTRAL R. R.CO.    PARISH OF ORLEANS.

7789

# OPINION.

St. Paul, Judge.

This is a suit for a carload lot of crates for packing and shipping oranges which the consignee refused to receive when tendered to him by defendant.

The facts are that the crates were shipped about Sept 21st 1911 and were tendered to the consignee only in March 1912, although they were to be carried less than 100 miles. Meanwhile (about Oct 15 1911) the consignee, after vain effort to obtain delivery, had notified defendant that he would no longer accept the shipment when tendered, and had purchased elsewhere the crates needed to ship his crop and thereby avoid the loss thereof. Ultimately (say in August 1912) the crates were sold by defendant for a fifth part of their cost, which amount it has tendered plaintiff.

The defense is two-fold; that the delay was due to a strike of defendant's clerical forces, and that the bill of lading relieves it of all liability for damages or delay resulting from "riots or strikes"; and that in any event the consignee had no right to reject the shipment because of the delay but should have accepted the same and then looked to the defendant for such damages as he might have suffered by reason thereof.

The first defense is without merit; we have already held that a clause in a bill of lading exempting the carrier from liability for damages and delays resulting from riots and strikes, has reference only to delays due to <u>violence</u> incident to riots and strikes, and not to unreasonable delays due only to temporary disorganization of the carrier's force of employees. (Interstate Electric Co vs I. C. R. R, 11 Orleans 238; see also Hutchinson on Carriers, Section 534)

In the case at bar there is no pretense of any violence incident to this strike outside of "personal encounters" between strikers and strike breakers, interfering in no way with the discharge of their duties by the latter; and admittedly the cause of the delay was the inefficiency of the new corps of employees.

## II.

As to the other defense, it is true that in general a consignee is not entitled to reject a shipment merely on account of delay in delivery thereof but must accept the same and look to the carrier for damages; and it has even been held that the length of the delay does not affect the operation of the rule, nor the fact that the consignee has been obliged to buy other like goods and has no further use for the shipment (10 Corp Jur 308, Note 2). On the other hand it has also been held that an

exception to the rule occurs where because of unreasonable delay the goods become valueless, or in other words the delay has caused what is equivalent to a total loss to the owner; under these circumstances a recovery of the full value of the goods is proper (10 Corp Jur 308, Note 7)

It seems then that there is some conflict between the authorities; and under the circumstances we prefer to follow the more liberal rule as last stated; and for these reasons:

I. The authorities upon which the rule as first stated is based are not consistent with themselves. In Baumbach vs Gulf &c R R (4 Tex Ct App 650; 23 S. W. Rep 693) the shipment was still on hand when the rule was applied, so that it still might be sold by the consignee to fix the amount of his damages, and thus no injustice would result. But in Chicago &c R R vs Pfeifer (90 Ark 524; 119 S. W. Rep 642; 22 L R A N S 1107) the shipment, as in this case, had been disposed of by the carrier after having been rejected by the consignee, and hence (to avoid injustice) the court held that this amounted to a conversion entitling the consignee to recover all that he sued for. In I. C. R. R. vs

Johnson (116 Tenn 624; 94 S.-W. Rep 600) the court refused the very relief pointed out in the rule it laid down, viz, the difference in price of the articles purchased to replace the delayed shipment.

2. It is also in conflict with the well settled principle that one who is about to suffer damages through the fault of another must not sit supinely and allow the damages to run on, but must take such steps as lie in his power to minimize the loss. Manifestly, as in this case, he must supply the needed goods from some other source in order to avoid still greater loss which would result from his inaction; and since this is a duty laid upon him by law he should not be penalized for having done so.

3. The whole rule is purely artificial and technical; the measure of damages in all such cases is obvious, and if in point of fact the price ultimately received for the damaged or delayed shipment is the same whether sold by the consignee or by the carrier, the actual effect of apllying it under such circumstances is simply to releive the carrier of all liability whatever.

4. Our own Supreme Court has rejected the rule where the damages are more than slight. i. e. where they are _material_. Burkenroad- Goldsmith Co vs I. C. R R Co, 138 La 81 (83, 85, 89); See also So. Exp. Co vs Briggs, 1 Ga App 294, 57 S. E. Rep 1066; Lambert Murray Co vs So. Exp. Co, 146 N. C. 321; 59 S. E. Rep 991.

The judgment appealed from is therefore amended by increasing the amount allowed plaintiff $420. with legal interest from Oct 21st 1911, and costs of both courts; and asxthus amended it is affirmed.