## WELLS FARGO & COMPANY EXPRESS v. HARWELL.

### Opinion delivered November 3, 1913.

1. CARRIERS—DELAY IN DELIVERY OF GOODS SHIPPED.—A common carrier is liable in damages for negligent delay in the transportation of property, but the owner can not, on account of unreasonable delay in the delivery, refuse to receive the goods, and sue the carrier for a conversion. (Page 85.)

2. CARRIERS—FAILURE TO DELIVER GOODS SHIPPED—MEASURE OF DAMAGES.—When a carrier failed to deliver a shipment of goods to the consignee, the damages due the consignee is the market value of the goods with interest, less the cost of carriage. (Page 86.)

3. CARRIERS—FAILURE TO DELIVER GOODS PROMPTLY—TENDER—LIABILITY.—Where a carrier failed to deliver goods shipped promptly, but later tendered the identical shipment, and the consignee wrongfully refused to receive it, the carrier can not abandon the shipment nor convert it to its own use, but is liable for the value thereof, less the reasonable cost attendant upon keeping and disposing of the goods. (Page 86.)

4. CARRIERS—FAILURE TO DELIVER GOODS SHIPPED—LIABILITY.—Where an express company failed to deliver to the consignee the identical goods shipped, the consignee may recover the full value of the goods with interest, less the cost of carriage. (Page 86.)

5. APPEAL AND ERROR—ERRONEOUS INSTRUCTION—PREJUDICE.—Where the trial court gave an erroneous instruction to find for the plaintiff, the error is not prejudicial when the verdict is in accordance with the law and the facts of the case. (Page 87.)

Appeal from Sevier Circuit Court; *Jeff T. Cowling*, Judge; affirmed.

STATEMENT BY THE COURT.

Appellee shipped by express from De Queen to his order, at St. Louis, Missouri, nine bags of furs and brought suit for damages, alleging a failure to deliver them. The appellant admitted receiving the furs for transportation and denied that they were not delivered within a reasonable time; alleged that they were transported to the city of St. Louis, and tendered in good condition for delivery to appellee and that he refused to accept them. He was notified in writing, three times, that they were there subject to his order, on December 23, January 4 and January 6; that the shipment was in its office, in St. Louis, subject to his order and ready for delivery.

It appears from the testimony that nine bags of skins were shipped by appellee from De Queen on December 14, to his order at St. Louis, Mo., and on the 16th an additional bag. The appellee arrived in St. Louis and demanded the furs from the express company on the 18th of December and was informed that they were not there. In the afternoon of that day he was in the place of Funston Bros., large fur dealers in that city, where he discovered some tags, which he recognized as those belonging on his shipment, and told Funston Bros. that the furs belonged to him. They were scattered at the time on the floor among many others and being graded by the employees. Funston Bros. told him he could have the furs, but he declined to receive them on the ground that they had been mingled with the others and his own could not be selected therefrom. He went again to the express office in the morning and told the officers they had been delivered to

Funston Bros., and the agent then told him he could get
them by going up there for them. The express com-
pany insisted upon his staying over in St. Louis until
the next day, agreeing to pay his expenses and to deliver
the furs to him. He stated he could not receive them if
tendered, since he was satisfied that they could not de-
liver the furs he had shipped, and he did not care to take
any others. The express company got some furs back
and had them repacked in the original sacks, and on the
23d inst. wrote appellee: "We hold this shipment in-
tact, and are ready to deliver same on your order. Will
you kindly advise me at once what disposition you wish
made of the furs, which in the meantime we will hold
subject to your order and at your risk?" On January
4 and 6, letters of like kind were also written. Appellee
replied to the letter of the 6th that he had found the furs
scattered over the floor at Funston's and had been ad-
vised afterward by the company that the furs were not
there, and knowing that they already had been delivered
to Funston's and opened and scattered out on the floor
among the others, that the company could not return
them, "I then and now positively refuse to accept the
shipment." The express company introduced evidence
tending to show that the same furs that had been shipped
by appellant had been put back into the same sacks from
which they were taken at Funston & Bros.' place and
tendered to appellee, who declined to receive them. After
failing to deliver the furs, the express company had them
inspected, graded and valued by experts working for
three different concerns. One of them placed the value
at $495.55. They were graded and valued on January 1,
thereafter, at $536, and on the 22d placed on sale and the
highest bid offered was $546, which was declined, and the
shipment finally sold for $575. The testimony tended to
show that the furs were well cared for, and in as good
condition as when shipped. The appellee admitted that
he refused to take the furs when they were tendered him,
because he did not know whether they were his furs or
not; in fact, they were not, because, according to the list,

there were 111 more 'possum skins than he had shipped and one civet cat which he had not shipped.   He said also that he sold the sack of furs which was delivered for $105.90, and at the same rate as the nine sacks of skins that were worth as much would have brought $890.50, and that he could have sold them for that price.   That was the market value at the time the express company failed to deliver them.

The court refused all of appellant's requested instructions, and gave over its objections the following:

No. 1.   Your verdict, in this case, will be for the plaintiff.

No. 2.   If you find from the evidence that the defendant failed to deliver the furs to the plaintiff, and it was not in its power to deliver them to the plaintiff after the plaintiff arrived in St. Louis, then your verdict will be in favor of the plaintiff, for the reasonable cash market value of the furs in St. Louis on the 18th day of December, 1912, after deducting $11.32 express charges with 6 per cent interest on the amount that you find to be due from the 18th day of December up to the present.

No. 3.   If you find that the defendant was able to return or deliver the furs to the plaintiff at any time from the time he arrived at St. Louis up to the bringing of this suit, and offered to return the furs to him, then your verdict will be for the plaintiff in the sum of $563.68, which is the amount for which the furs sold, $575, with the express charges of $11.32 deducted.

No. 5.   The burden is upon the plaintiff to prove by a preponderance of the testimony the cash market value of the furs in St. Louis.

No. 6.   The court instructs you that the defendant made a lawful tender of the goods, provided you find that it tendered and was able to return the identical goods received by it from the plaintiff.   The only question, therefore, for your consideration on that point is whether or not the defendant was in possession of and offered to return the identical goods which it received from the plaintiff.

The jury returned a verdict for the full amount sued for, and from the judgment thereon appellant brings this appeal.

*J. S. Steel, J. S. Lake* and *James D. Head,* for appellant.

Delay in delivery of the shipment does not constitute a conversion and does not justify the consignee in refusing same.   44 Ark. 439; 90 Ark. 524; 99 Ark. 568; (Ky.) 12 L. R. A. (N. S.) 431; 103 S. W. 254; 2 Hutch.-Car., § 651, p. 715.

The evidence shows there was no conversion of the goods, and the court should have granted the peremptory instruction.   99 Ark. 568.

*W. H. Collins* and *B. E. Isbell,* for appellee.

The peremptory instruction given by the court to find for the appellee was correct (94 Ark. 599), and appellant was liable, whether the misdelivery occurred by fraud, mistake or imposition.   39 Ark. 490, and authorities there cited.   99 Ark. 497; 90 Ark. 524; 148 S. W. 1035; 72 Ark. 473.

There was no tender of the identical shipment or its value in money.   The appellant should have tendered all of the money received for them and kept the tender up in court.   Kirby's Digest, § 896; 30 Ark. 506; 85 Ark. 32; 90 Ark. 209; 94 Ark. 610.

KIRBY, J., (after stating the facts).   It is strongly urged that each of the instructions given was erroneous and the one directing a finding for the plaintiff especially prejudicial.

A common carrier is liable in damages for negligent delay in the transportation of property, but the owner can not on account of unreasonable delay in the delivery refuse to receive the goods and sue as for a conversion. *Chicago, R. I. & P. Ry. Co.* v. *Neusch,* 99 Ark. 568; *Chicago, R. I. & P. Ry. Co.* v. *Pfeifer,* 90 Ark. 524; *C. & O. Ry. Co.* v. *Saulsberry,* 12 L. R. A. (N. S.) 431. The shipper had no right to refuse to accept the shipment of his goods

tendered for delivery on account of delay, nor did he do so, but refused to receive the shipment because it had been broken and the contents scattered, and he did not believe they were the skins purchased and shipped by him, because there were more than a hundred more of a certain kind than he had shipped, and even if he had wrongfully refused to receive the goods, the carrier could not convert them to its own use, nor abandon the shipment without liability therefor. *St. Louis, I. M. & S. Ry. Co.* v. *Cumbie*, 101 Ark. 179; *Chicago, R. I. & P. Ry.* v. *Pfeifer, supra.*

If appellee was bound to accept the shipment when tendered to him and failed to do so, the express company was still liable to him for the amount for which the skins were sold, less the charge for carriage, as the court correctly told the jury, in instruction numbered 3. It also told the jury that if the company failed to deliver the shipment after its arrival in St. Louis they should find for the appellee, the market value less the cost of carriage, with interest, which was a correct instruction, and that the only question for determination by the jury on the point of a tender of the shipment by the company was whether the skins offered to be delivered were the identical ones shipped by the plaintiff.

If the company failed to deliver the shipment it was liable for the market value thereof, and if it offered to deliver the identical shipment and the consignee wrongfully refused to receive it, it could not abandon the shipment nor convert it to its own use, but was liable for the value thereof, in a proper action, less the reasonable cost attendant upon the keeping and disposition of it. The jury necessarily found that the identical shipment of skins was not tendered for delivery to appellee, a question that was properly submitted by the instructions, and the fact that they were told to find a verdict for the plaintiff, though wrong, was not prejudicial, because they did find that the shipment had not been tendered for delivery.

Appellant's requested instructions that correctly stated the law were sufficiently covered by those given.

Finding no prejudicial error in the record, the judgment is affirmed.