## Hutchison Grocery Company, Appellee, v. Louisville & Nashville Railroad Company, Appellant.

1. CARRIERS—*extent of liability for delayed delivery of goods first delivered to wrong person.* A carrier of freight is not liable for the market value of the goods at the time and place they should have been delivered, as for conversion, where it delivered the goods to a person other than the consignee and thereafter within a few days, upon learning of the wrongful delivery, secured the goods from such person and tendered the full shipment to the rightful owner, who refused to accept them, claiming shortage, where no special damages from the delay in delivery is pleaded or proven and the evidence disproved the claim of shortage, and in such case the carrier is liable only for actual damages suffered by reason of the delay.

2. CARRIERS—*instructions applying measure of damages for nondelivery in case of misdelivery erroneous where tender made.* Instructions holding a carrier of freight liable, as in conversion, for damages sustained by consignee for failure of the carrier to deliver the shipment and for a delivery of the goods to persons other than the consignee are prejudicial to the carrier for ignoring a tender of the goods to the consignee by the carrier after it had recovered them and tendered them to the consignee, who refused to accept them, since the jury could conclude therefrom that the value of the goods constituted the measure of damages, the consignee never having received them.

3. CARRIERS—*when instruction relieving consignee from liability for refusal of conditional tender of goods by carrier erroneous.* In an action by a consignee against a carrier, as in conversion, for the value of goods misdelivered by the carrier but afterwards tendered to consignee, who refused to accept them, it is improper to instruct the jury that if the carrier offered to deliver the goods to the consignee and at the same time demanded that it pay demurrage charges, it was not the duty of the consignee to accept them unless it had been notified by the carrier that it was ready to deliver them and the time therefor fixed by the notice had expired, where no demand for demurrage as a condition of delivery was made, so that the jury were left to construe as such a demand a written notice by the carrier that the goods had arrived and were ready for delivery and that demurrage charges would begin after forty-eight hours, in accordance with the bill of lading.

4. CARRIERS—*when substitution by carrier of standard goods for those not delivered sufficient to charge consignee for rejection.* It was error to instruct the jury that it was no defense to an action by a consignee for damages for the value of an entire carload shipment of goods which were misdelivered by the carrier and rejected by the consignee, upon tender by the carrier, after it had recovered the goods, that the carrier had offered to return goods similar but not those actually shipped, where the evidence showed that the goods were standard and that all but a very small quantity of the original shipment was actually tendered by the carrier and that any shortage was made up by substitution therefor of goods of the same manufacture, standard, quality and value, by the carrier, that the consignee had no reasonable excuse for refusing to accept the shipment as tendered and that it would have suffered little, if any, loss had it accepted the goods tendered.

5. EVIDENCE—*when self-serving letter of party's agent inadmissible.* In an action against a carrier of freight for the value of goods misdelivered by the carrier and afterwards recovered by it and tendered to the consignee, who refused to accept them, it was error to admit in evidence a letter written by the carrier's agent to the consignee after the tender had been rejected, where it shows upon its face that it was a personal letter written by the agent in his own interest.

Appeal by defendant from the Circuit Court of Jefferson county; the Hon. JULIUS C. KERN, Judge, presiding. Heard in this court at the March term, 1923. Reversed and remanded. Opinion filed July 2, 1923.

CHARLES P. HAMILL, for appellant; CONRAD SCHUL, ALBERT WATSON and STANLEY WATSON, of counsel.

WILLIAM H. GREEN, for appellee.

MR. JUSTICE BARRY delivered the opinion of the court.

On July 22, 1921, appellant, by a straight bill of lading, undertook to carry 520 cases of bottled near beer from St. Louis, Mo., to McLeansboro, Ill., and there deliver the same to appellee. Upon arrival at destination, appellant's agent delivered the beer to Sneed & Wilbanks on a supposition, not well founded, that they were the authorized agents of appellee. They unloaded the car on July 26 and placed the beer in their warehouse.

A few days later and after the car in which the beer had been carried had left McLeansboro, appellant's agent learned that the delivery to Sneed & Wilbanks was not satisfactory to appellee. He then had the beer reloaded in another car and on August 10 wrote appellee that its car of 520 cases of beer had arrived and was held awaiting instructions and car service accruing and asked for disposition of the same.

On receipt of that notice, Mr. Hutchison, appellee's manager, drove to McLeansboro to see about it. He says that upon his arrival he looked all through appellant's yards but could not find the car in which the beer had been shipped; that he thought some crooked work was being played so he thought he would play detective. He then called on appellant's agent and said he was Mr. Miller, in the employ of appellee, and that he had the notice about the car. That the agent replied: "The car is down in the yard," but that he would have it up at 2:30. He says that he went across the street and watched the depot and that no car was switched. That he went back at 2:30 and the agent said to him: "Here is the car," and that he replied: "No that is an L. & N." That the agent then said: "That is what we put the Bud

back in" and he replied: "That is not ours. There is not over half a car there. It is not ours. Good-bye." He says that he then turned around and walked off without counting the cases or knowing how many were in the car or whether it was the beer that had been shipped to appellee.

Appellant's agent testified that when Mr. Hutchison introduced himself as Mr. Miller he stated that if the beer was loaded in the original car he would accept the shipment, that he had orders to accept it. This was not denied by Mr. Hutchison and it explains the attitude he assumed when he found that the beer was not in the same car in which it was originally shipped. Appellant's agent says that when he tendered the car to Mr. Hutchison it contained 520 cases of beer. Mr. Sneed says he reloaded the beer and checked the 520 cases into the car. Mr. Sherry says that he unloaded the car after it had been tendered to Mr. Hutchison and that he checked out 520 cases of beer.

Mr. Hutchison testified that he was in McLeansboro on July 26 and saw some men unloading his car of beer but did not know at that time that the draft had not been paid. He said that one of the auto trucks that came from the car unloaded some cases of beer at Boyd's store but could not state the number. A statement of account was put in evidence which indicated that Boyd purchased 15 cases of beer from Sneed & Wilbanks on that date. Both Sneed and Wilbanks testified that none of the beer in question was sold to Boyd or any other person. That when they unloaded the car the 520 cases were put in one end of the warehouse where it remained until it was reloaded in the other car. They also testified that when they unloaded the car they had 200 or 250 cases of beer in the other end of the warehouse and that those cases were a part of a carload previously purchased from appellee.

The declaration is in assumpsit and consists of the

common counts and a special count to the effect that appellant undertook to carry 520 cases of beer from St. Louis, Mo., to McLeansboro, Ill., and there deliver the same to appellee but failed to do so, whereby the goods were lost to appellee. Appellant pleaded the general issue and upon the trial appellee recovered a verdict and judgment for $1,325. While the evidence on behalf of appellee is to the effect that the fair cash market value of the beer was $1,586, it is apparent that the recovery was on the theory that appellant was guilty of a conversion and that appellee was under no obligation to accept the beer when tendered on August 10. The evidence shows that there was a good demand for such beer at that time and for a month thereafter.

The law is well settled that when goods are delivered to the wrong person and never reach the consignee the carrier must respond in damages, the measure of which is the fair cash market value at the time and place they should have been delivered. If the carrier recovers the goods and tenders them in good condition to the consignee, may he refuse to accept them and recover their value? That is the all-important question presented by this record.

Suppose the beer had been delayed in transit and did not reach its destination until August 10. Appellee could not refuse to accept it and hold appellant for its value. Appellant would be liable only for the damages caused by the delay, that is, the difference in the value of the goods at destination at the time they were in fact delivered and when they should have been delivered in the usual course of transportation. *Sangamon & M. R. Co. v. Henry,* 14 Ill. 156; *Galena & C. U. R. Co. v. Rae,* 18 Ill. 488. Mere delay in the delivery of goods by a carrier, no matter how long continued, is not a conversion thereof, but is only a breach of the contract of carriage. For a failure to deliver in a reasonable time, the carrier makes itself

liable for the damages caused thereby, but the consignee cannot refuse to accept the goods and recover the full value. He is compelled to receive them, except, perhaps, where the delay has destroyed the value of the goods entirely, or caused what is equivalent to a total loss. 4 Ruling Case Law, p. 745.

If appellee had accepted the beer on August 10, when it was tendered, it could not recover more than nominal damages unless it averred and proved that between the time of the conversion and the return of the property special damage had been sustained. *Barrelett v. Bellgard,* 71 Ill. 280. It is the duty of a party injured by a breach of contract to do all that is reasonably in his power to prevent the damage or reduce it to the smallest amount. *Cedar Rapids & I. C. Railway & Light Co. v. Sprague Elec. Co.,* 280 Ill. 386.

A pool table was shipped c. o. d. and was delivered by mistake without making the collection. It was afterwards recovered and tendered to the shipper in good order. The court said: "Although there may have been a technical conversion, yet if it was not wilful, and the property was restored uninjured before suit brought, it would go in mitigation of damages, even without proof of its acceptance. *Greenfield Bank v. Leavitt,* 17 Pick. (Mass.) 1; *Hart v. Skinner,* 16 Vt. 138; *Yale v. Saunders,* 16 Vt. 243; *Johnson v. Weedman,* 5 Ill. (4 Scam.) 495; 1 Chit. on Pl. (margin) p. 161, and cases in notes." *American Exp. Co. v. Brunswick,* 4 Ill. App. 606.

An owner shipped two crates of picture frames to himself at Lampasas, Texas, and they were delivered by the carrier to another person who lived about twenty miles away. When called for they could not be delivered but the carrier procured them the following day and three days later tendered them to the owner, who refused to receive them. He sued and recovered the value thereof and the judgment was

reversed. The court held that where there is a delay in making delivery as a result of a mistake and there is no intention to permanently deprive the shipper of his property, there is no conversion and the sole remedy is an action for damages for a failure to make prompt delivery. *Gulf, C. & S. F. Ry. Co. v. Wortham,* — Tex. Civ. App. —, 154 S. W. 1071.

In *Wells Fargo & Co. Exp. v. Harwell,* 110 Ark. 81, 160 S. W. 858, the carrier delivered a shipment of furs to one who was not entitled to receive them and when the consignee called for them delivery could not be made. The carrier then procured them from the one to whom they had been delivered and tendered them to the owner, who refused to receive them because they had been unpacked and mingled with others. The carrier then sold them. The court held that if the identical furs were tendered there would be no liability except to the amount received on the sale of same; that a carrier cannot be held liable for a conversion for an unreasonable delay in making delivery.

Where an express company lost the plaintiff's trunk and was unable to deliver it on demand but later found it and tendered it to the plaintiff, it was held that there was no conversion and that defendant was only liable for such damages as were caused by the delay. *Wells Fargo & Co. v. Hanson,* 41 Tex. Civ. App. 174, 91 S. W. 321. If a carrier refuses to deliver goods to the consignee except upon unreasonable conditions, but later tenders them unconditionally and in good order, there is but a technical conversion and the owner can recover but nominal damages. *Sutton v. Great Northern Ry. Co.,* 99 Minn. 376, 109 N. W. 815.

Where the carrier informs a consignee that his goods have not arrived although the fact is otherwise, yet, if, before action is brought, the goods are tendered to him, he cannot treat the previous refusal to deliver as a conversion and recover the value of the goods.

*Williams v. Delaware & H. Canal Co.,* 6 N. Y. Supp.
36, 25 N. Y. St. Rep. 518; *Louisville & N. R. Co. v.
Lawson,* 9 Ky. L. Rep. 681 (abst.).

In view of the decisions of the courts of this and
other States hereinabove cited, we are of the opinion
that when a carrier delivers goods to the wrong per-
son but later secures them and tenders them to the
owner in good condition and before suit brought, the
carrier is not liable for more than nominal damages,
or, at most, for such damages as were caused by the
delay in making delivery. In the case at bar, there is
no claim made in the declaration or the proofs that
appellee suffered any damages by the delay from July
26, the date the beer arrived, and August 10, when it
was tendered to appellee.

Appellee's first, second and fifth instructions were
to the effect that if appellant delivered the goods,
without authority, to a person other than appellee the
latter would be entitled to recover such damages, if
any, as it had sustained by the failure of appellant to
deliver the same to appellee. Its seventh instruction
told the jury that the liability of a carrier for mis-
delivery of goods is the same as for a nondelivery and
that if appellant delivered the goods to persons other
than appellee, without authority, it would be liable to
appellee in such sum as appellee has shown by a pre-
ponderance of the evidence it was damaged. All of
those instructions ignored the question of a tender and
the measure of damages in case there was a tender.
As appellee did not actually receive any of the goods,
the jury would likely conclude that appellee was dam-
aged to the extent of their value.

By appellee's third and fourth instructions the jury
were told that if appellant offered to return or to
deliver the goods to appellee and at the same time de-
manded that it pay demurrage, then it was not the
duty of appellee to accept the goods unless it had been
notified by appellant that it was ready to deliver such

goods to appellee and the time fixed by appellant's rules had expired. The letter of August 10, cannot be construed as a demand for the payment of demurrage as a condition of delivery, and yet it must have been so construed by the jury, as there is no evidence that such a demand was made. That letter was nothing more than a notice of the arrival of the car and that it was ready for delivery and that demurrage charges would begin after forty-eight hours in accordance with the terms of the bill of lading.

Appellee's sixth instruction told the jury that, even if appellant offered to return goods similar to but not those that were actually shipped, the law did not require appellee to accept them, and such an offer, if proven, was no defense to appellee's demand for damages for a failure to deliver the goods that were shipped. From that the jury might very well say that if 15 cases were sold to Boyd and 15 other cases were included in the goods tendered, then, for that reason, appellee was not required to accept any of the goods and that the tender was no defense to appellee's claim for damages. If appellant had lost 15 cases while the goods were in transit and tendered the balance, it would not be seriously contended that appellee could refuse to accept and recover the value of the entire shipment. Ordinarily a consignee is not required to accept anything but the goods actually shipped. We are of the opinion, however, that if the goods are standard and there had been a misdelivery through mistake and a small part of the shipment cannot be recovered, it is sufficient if the carrier procures and tenders other goods of the same standard, quality and value in lieu of such as it is unable to recover. If appellant tendered 505 of the cases actually shipped and 15 others of the same standard, quality and value and all of them in good condition, it would be highly inequitable to compel it to pay damages to the amount of $1,325. Under the evidence it is

quite apparent that if appellee had accepted the goods when tendered it would have sustained but little, if any, loss. The record discloses no reasonable excuse for refusing to accept the tender.

The letter of August 15, 1921, from appellant's agent to appellee, shows upon its face that it was a personal letter written in his own interest. No part of it should have gone to the jury and the questions in regard to its contents should not have been asked. We are unable to say that appellant has had a fair and impartial trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*