VULCAN METALS PRODUCTS, INC., Plaintiff and Counterdefendant-Appellant, v. LYNN B. SCHULTZ, Defendant and Counterplaintiff-Appellee.

Third District   No. 3—88—0331

Opinion filed January 30, 1989.—Rehearing denied April 11, 1989.

Arthur J. Inman, of Peoria, for appellant.

Cusack & Fleming, P.C., of Peoria (Michael A. Fleming, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Vulcan Metal Products, Inc. (Vulcan), filed suit against Lynn Schultz for money due pursuant to a written contract. Various motions were filed, and the trial court entered summary judgment in Vulcan's favor. The judgment was vacated on Schultz' motion and following a bench trial, the court entered judgment in favor of Schultz. Vulcan filed the instant appeal.

Lynn Schultz planned to enter into the replacement window business, and after several meetings with a Vulcan salesman, he ordered equipment and materials worth $6,321.33 from Vulcan. He later signed an agreement with Vulcan in which he unconditionally guaranteed the payment of all indebtedness incurred by his business and all legal expenses incurred in the collection of any indebtedness. Schultz did not pay for the merchandise and Vulcan instituted legal proceedings on February 3, 1986, to collect the amount due. Schultz did not file an answer to the complaint.

Schultz appeared on March 7, 1986, as required by the summons, but he appeared without counsel. Although Schultz was apparently given additional time to file an answer to the complaint, he failed to do so, and on May 1, Vulcan filed a motion for default judgment, summary judgment, or judgment on the pleadings. At the June 10, 1986, hearing on the motion, Schultz again appeared *pro se*. Vulcan's motion was denied and Schultz was given an additional 30 days to file an answer.

On June 12, 1986, Vulcan served Schultz with a request to admit certain facts pursuant to Supreme Court Rule 216 (107 Ill. 2d R. 216). Therein, Vulcan requested Schultz to admit that an exhibit attached to the complaint was an accurate copy of the guarantee he had

signed, that other attached exhibits accurately reflected the invoices and the statement of account of dealings between the parties, and that he owed Vulcan $6,795.15 plus fees and costs according to the terms of the guarantee. Schultz did not respond to the request within 28 days as required in Rule 216. Nor did Schultz file an answer to the complaint within the 30-day period provided by the trial court. Vulcan filed a motion for summary judgment on August 6, 1986, on grounds that Schultz failed to answer the complaint and that the failure to respond to the Rule 216 request admitted the matters of fact set forth in the request.

At the August 6 hearing on Vulcan's motion, Schultz appeared *pro se*. The trial court entered judgment in favor of Vulcan in the amount of $7,020.15 for the sum due and attorney fees, plus costs of $81.25.

On September 8, 1986, Schultz' newly retained attorneys filed a motion to vacate the judgment. Schultz alleged that he had a meritorious defense and counterclaim and that he was not represented by counsel before September 8. The trial court granted the motion to vacate on October 22 and ordered Schultz to answer the complaint and respond to the request to admit within 14 days.

On November 5, 1986, Schultz filed a response to Vulcan's request to admit and an answer to the complaint. He also filed a counterclaim alleging that the equipment Vulcan sold him was defective and caused him to suffer the loss of expenses incurred in organizing his business. He sought damages in the amount of $7,150.

The cause proceeded to trial and evidence was presented on June 10, 1987, and March 23, 1988. Schultz testified that after he decided to enter into the replacement window business, he spoke on several occasions with Mike Johnson, a Vulcan salesman. According to Schultz, Johnson told him he would need a business name, a place to operate the business, and certain equipment. Schultz testified that based on Johnson's advice, he purchased window-making machinery and equipment for $17,239 and office equipment for $1,309. He also entered into a six-month lease and his rental payments were $325 per month. Johnson ordered the necessary equipment and supplies from Vulcan so Schultz could begin making replacement windows. The equipment and supplies cost $6,321.33. Schultz testified that Johnson told him that after the shipment arrived, someone from Vulcan would fine-tune the machinery and show him how to make a window. Pursuant to Vulcan's request, Schultz signed a document in which he guaranteed payment of all indebtedness incurred by his business and further promised to pay all costs and attorney fees incurred in collecting

the debt.

The shipment arrived from Vulcan in January 1985. A Vulcan employee, John Erskine, was sent to help Schultz set up his shop and to demonstrate the window manufacturing process. According to Schultz, Erskine spent three days in his shop, but was never able to manufacture a merchantable window. Erskine told him the equipment would not manufacture a window, Schultz said. Schultz further stated that the Vulcan salesman, Johnson, later replaced the flag bar, the piece of equipment which was apparently defective, but they were still unable to construct a window.

Schultz testified that after Erskine's unsuccessful demonstration session, he made repeated requests for help, but further assistance from Vulcan never arrived and he was never able to manufacture windows. Schultz admitted he had not paid for the merchandise he received from Vulcan. Schultz stated that Vulcan agreed to accept return of the merchandise, but indicated that it would not accept open cartons. According to Schultz, Erskine opened every carton in the shipment, so he was unable to return any.

Finally, Schultz testified about financial losses he sustained. He testified about the amounts he paid for rent, utilities, and wages. He also stated that from September 1, 1984, until July of 1985, he spent a minimum of eight hours per day at his shop. Furthermore, Schultz stated that he and Johnson calculated the amount of profit he would make on each window and discussed projected sales for the Peoria area. At the beginning of the second day of trial, shortly before Schultz completed his testimony, he was permitted, over objection, to increase the prayer in his counterclaim from $7,150 to $57,045.

Mike Johnson, the Vulcan salesman Schultz worked with, testified on Schultz' behalf. He acknowledged that he told Schultz that Vulcan would provide trained assistance in setting up the shop. He stated that the window-making equipment Schultz purchased on his own was necessary to set up the shop. Like Schultz, Johnson testified that Erskine made numerous attempts to manufacture a window, but was unable to construct a merchantable window. He stated that Erskine determined the flag bar was the problem and ordered a new one, which arrived while Erskine was in Peoria, but they were still unable to construct a window of salable quality. Johnson testified that he brought a third flag bar to Schultz in February or March of 1985, but they could not get good results with that one, either.

Johnson testified that based on cost information provided by Schultz, he believed Schultz would have made an average profit of $38.03 per window. He also stated that he estimated that Schultz

would have been able to sell 1,000 to 1,500 windows per year. On cross-examination, Johnson acknowledged that the projected sales could be negatively affected by the economy, the window manufacturer's lack of skill, and failure to devote sufficient time to the business.

Bob Calkin, a plant manager for a window manufacturing company with experience in the business, testified that on the previous evening, he tried to construct a window using the equipment at Schultz' business, but was unable to do so. He stated that he tried two flag bars and neither worked. Calkin testified that if the flag bar had been drilled correctly, he could have manufactured a window with Schultz' equipment.

John Erskine testified by way of evidence deposition. He stated that the flag bars were the only problem and their performance was not satisfactory. However, he testified that by correcting the flag bar's error by hand, he was able to manufacture a window and demonstrate the process to Schultz.

On April 20, 1988, the circuit court issued its judgment. The court stated that it found the issues for Schultz and against Vulcan. Accordingly, the court dismissed the complaint and entered judgment in favor of Schultz on the counterclaim in the amount of $45,758.50 plus court costs. Vulcan perfected the instant appeal.

■■■ Vulcan first argues that Schultz' motion to vacate, filed 33 days after entry of summary judgment, was untimely and should have been denied because the trial court was without jurisdiction to grant it. We disagree. The Illinois Supreme Court has repeatedly held that where a court loses jurisdiction as the result of the expiration of 30 days following entry of a judgment or decree dismissing the action, and where a motion to vacate is pending, the parties may, by appearing voluntarily and participating in further proceedings, revest the court with jurisdiction over their persons and the subject matter of the action. (*E.g.*, *Weisguth v. The Supreme Tribe of Ben Hur* (1916), 272 Ill. 541; *Craven v. Craven* (1950), 407 Ill. 252.) In *Weisguth*, the court quoted from an earlier case, *Herrington v. McCollum* (1874), 73 Ill. 476, in which it stated, "The defendants, to avail of the right to question the jurisdiction of the court when the case was re-instated, should either have not appeared at all or limited their appearance to the objection against the jurisdiction of the court." 272 Ill. at 543.

For the revestment rule to apply, the parties must actively participate without objection in proceedings which are inconsistent with the merits of the prior judgment. (*People v. Kaeding* (1983), 98 Ill. 2d 237.) In *Sears v. Sears* (1981), 85 Ill. 2d 253, the supreme court determined that the doctrine did not apply because the post-judgment hear-

ing at which the parties appeared did not concern the merits of the judgment and the participants did not ignore the judgment and begin to retry the case, thereby implying their consent to have the judgment set aside. In the case at bar, the record reflects that Vulcan objected to the motion to vacate, but it does not appear that Vulcan raised the jurisdictional issue at that time, or at any time prior to this appeal. Furthermore, after the summary judgment was vacated, Vulcan actively participated in further discovery and a two-day trial. Vulcan's actions were inconsistent with the prior judgment and served to revest the court with jurisdiction.

■ Next, Vulcan argues that the court erred in permitting Schultz to file untimely responses to the Rule 216 request to admit. After acknowledging that there is disagreement among the districts of the Illinois Appellate Court on the issue of whether late filing of responses is permissible, this court noted that the Third District has consistently held that a litigant's failure to file a timely response under Rule 216(c) results in automatic admission of the facts as stated in the request. (*Johannsen v. General Foods Corp.* (1986), 146 Ill. App. 3d 296.) Unlike the plaintiff in *Johannsen*, however, Vulcan failed to promptly move the court to strike the late-filed response or to otherwise object to the order permitting the tardy filing until the case reached the appellate level. Under such circumstances, we find that Vulcan waived the issue of late filing and is precluded from raising it on appeal. See *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669.

■ Vulcan next alleges that the trial court improperly admitted evidence in violation of the parol evidence rule. (Ill. Rev. Stat. 1987, ch. 26, par. 2—202.) Specifically, Vulcan contends that testimony relating to the discussions between Schultz and Johnson contradicted the terms of the guarantee Schultz signed and therefore should not have been admitted. We disagree. The parol evidence rule provides that terms set forth in a writing intended by the parties as a final expression of their agreement may not be contradicted by evidence of an earlier or a contemporaneous oral agreement. However, the evidence in this case establishes beyond question that the guarantee Schultz signed enabled him to receive credit with Vulcan and was never intended to be the final, complete expression of the parties' agreement. Therefore, testimony about other terms did not violate the parol evidence rule.

■ Vulcan also argues that the court erred in admitting evidence of Schultz' alleged loss of income and sales. Vulcan claims it was error because Schultz' counterclaim alleged only that he suffered the loss of

expenses incurred in organizing his business and because the evidence submitted was speculative. Schultz contends that the evidence was properly admitted and, alternatively, that any error in admitting it was harmless because the court did not consider it in awarding damages. We agree with Vulcan. Although Schultz alleged that the materials supplied by Vulcan were defective, he claimed only that he suffered expenses incurred in organizing the business. Lost profits are not in that category and that evidence should have been excluded. Furthermore, lost profits are allowed for compensation for breach of contract only when they can be proved with reasonable certainty. (*E.g., F.E. Holmes & Son Construction Co. v. Gualdoni Electric Service, Inc.* (1982), 105 Ill. App. 3d 1135, 1141.) This standard of proof was clearly not satisfied here. Schultz testified that based on a survey of uncertain origin, Johnson told him he could sell 3,000 windows annually and make an average profit of $38.03 per window. The related exhibit Schultz offered into evidence contains sales projections for 3,000 windows; however, the exhibit also contains sales projections based on annual sales of 2,000 units and 1,500 units. Johnson testified that a realistic figure for Schultz' business would have been 1,000 to 1,500 windows per year. Furthermore, Johnson acknowledged that sales could be negatively affected by numerous factors, including the economy, lack of skill in manufacturing windows, and failure to devote the amount of time necessary to the business. Accordingly, we find the evidence on lost profits to be remote and speculative, and it should not have been considered by the court.

Schultz contends that the court did not consider the evidence of lost profits and therefore reversal is not required. Schultz notes that during his closing argument, he used a document summarizing the evidence on damages and lost profits. The total amount requested, excluding lost profits, was $45,758.50. This is the precise amount awarded by the court, and Schultz therefore concludes that the court did not award damages for lost profits. The trial court's order merely awarded damages to Schultz and does not explain how the amount was determined. Because we are unable to state with certainty that the court did not consider the evidence of lost profits or that any such consideration did not affect the outcome, we must reverse the award and remand the cause for a determination of damages.

We note that the summary document Schultz used during closing argument is not part of the record and, furthermore, it contains both evidence which conflicts with that he presented at trial as well as evidence never introduced at trial. According to the document, Schultz worked an average of 20 hours per week at the shop from September

1, 1984, until July 1, 1985, and his time was worth $12 per hour. However, Schultz testified at trial that he worked a minimum of eight hours per day during that period, and no evidence was presented to prove the value of Schultz' time. During closing arguments, counsel may not supply new or additional facts not in the record. (See *Leonard v. Pitstick Dairy Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580.) Schultz' mischaracterization of the evidence coupled with the improper presentation of new evidence in his summary document lends further support for our decision that the damage award must be reconsidered.

■ Lastly, Vulcan argues that the decision in favor of Schultz is against the manifest weight of the evidence. The findings and judgment of a trial court in a nonjury case will not be disturbed by the reviewing court if there is any evidence in the record to support them. (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 23.) After a careful review of the record here, we are satisfied that the judgment in favor of Schultz is amply supported by the evidence.

In summary, we affirm the judgment of the trial court in favor of Schultz, but reverse the award of damages and remand the cause for a redetermination of damages to be made in accordance with this opinion.

Affirmed in part; reversed in part and remanded.

STOUDER, P.J., and WOMBACHER, J., concur.