# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Santorini Cab Corp. v. Banco Popular North America*, 2013 IL App (1st) 122070**

---

| | |
|---|---|
| Appellate Court Caption | SANTORINI CAB CORPORATION, Plaintiff-Appellant, v. BANCO POPULAR NORTH AMERICA, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-2070 |
| Filed | October 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action alleging that defendant breached a contract to sell taxicab medallions to plaintiff, the appellate court rejected plaintiff's contention that the trial court erred in precluding lost profit damages by refusing to calculate plaintiff's damages using the market price of the medallions at the time of the trial, since plaintiff's refusal to comply with the trial court's discovery order resulted in a lack of evidence showing with reasonable certainty the portion of plaintiff's claimed lost profits caused by defendant's conduct. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-10198; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Murphy & Hourihane, L.L.C., of Chicago (Eugene E. Murphy, Jr., John N. Hourihane, Jr., John H. Scheid, Jr., David F. Hyde, and Randall S. Borek, of counsel), for appellant.

Chuhak & Tecson, P.C., of Chicago (Sanjay Shivpuri, of counsel), for appellee.

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Santorini Cab Corp. (Santorini) sued defendant Banco Popular North America (Banco) for breach of contract concerning the sale of two taxicab medallions. Following a bench trial, the trial court found that Banco had breached the contracts and awarded Santorini $37,550 in damages.

¶ 2    Santorini appeals, contending the trial court made erroneous partial summary judgment rulings in Banco's favor prior to the bench trial. Specifically, Santorini argues the trial court erred by precluding lost profit damages and by failing to calculate Santorini's damages by using the market price of the medallions at the time the case went to trial. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                          I. BACKGROUND

¶ 4    Santorini and Banco entered into two contracts for the sale of taxicab medallions. The May 2006 contract was for the sale of medallion number 2408 from Banco to Santorini for $48,000. The July 2006 contract was for the sale of medallion number 2361 from Banco to Santorini for $48,000. Both contracts contained substantially the same terms, including paragraph 6, which provided that if the parties were unable to obtain final approval from the department of consumer services of the City of Chicago (DCS) for the transfer of the medallions within 90 days of the date of the parties' contract, or if during the 90-day period the DCS indicated that it would not approve Santorini as a qualified purchaser of the medallions, then in either event, Banco's sole liability would be to refund Santorini's deposit, and upon such refund, neither party would have any further rights, obligations, or claims against the other, and the contract would be deemed void and of no further force or effect. The contracts also contained provisions that any notice or other communication was to be delivered by hand, sent by overnight courier or mailed by registered or certified mail. Both

contracts also contained clauses stating that time was of the essence.

¶ 5      Plaintiff paid the required earnest money under each contract and at all relevant times was financially and otherwise able to purchase the two medallions.

¶ 6      After the 90-day period had expired under each of the contracts, the parties still continued to work together to close the sale. The last written communication between the parties was a letter from Banco's counsel to Santorini's counsel, dated December 15, 2006, which stated that an issue arose concerning whether Banco's borrower had received the requisite notice in the underlying foreclosure proceedings on the medallions. Until that issue was resolved, Banco was not in a position to move forward with the sale to Santorini. Furthermore, although the DCS had received the documents concerning the medallion transfer, the DCS had not given its final approval to allow the transfer. Accordingly, Banco's counsel stated:

> "No further steps should be taken to consummate the transaction until the issue of the borrower's notice has been resolved. I will continue to work on this matter and try and bring it to an amicable resolution. Until that time, the transaction is being stayed."

However, at the December 2011 bench trial in this case, Banco's counsel testified that he had telephone calls with Santorini's counsel in January and February 2007 and told him that the deals concerning both contracts were "dead."

¶ 7      In September 2007, Santorini filed this breach of contract lawsuit against Banco. Santorini alleged that its damages included the appreciation in the value of the medallions and the lost profits it would have derived from ownership of the medallions. Banco's discovery requests sought specific documents relevant to the basis of the lost profits claim, such as tax returns, financial statements, before-tax revenue, expenses, costs, overhead, and profit. In response, Santorini produced tax returns for 2006 and 2007, and less than 20 checks payable to Santorini in 2008 and 2009. The trial court granted Banco's motion to compel information concerning lost profits, but Santorini's compliance with that discovery remained an issue. Banco filed a motion to dismiss or, in the alternative, a motion for rule to show cause.

¶ 8      In July 2009, the trial court sanctioned Santorini for failing to answer discovery concerning alleged lost profits by barring Santorini from relying on documents and information requested in Banco's second set of discovery requests that had not been produced.

¶ 9      In September 2009, Banco attempted to return to Santorini the earnest money Banco had been holding in escrow, but Santorini did not cash the check due to the pending litigation.

¶ 10     Banco moved for partial summary judgment on Santorini's lost profits claim, and in July 2010, the trial court entered summary judgment precluding lost profits damages. Specifically, the court stated that it was like "pulling teeth getting documents from [Santorini] regarding damages." Moreover, the court would not allow Santorini to circumvent the July 2009 sanction order by having its witness, Savas Tsitiridis, testify about lost profits "off the top of his head without having any backup documents." The trial court noted that Santorini's refusal to provide the lost profits discovery to Banco prevented Banco from investigating that claim prior to Tsitiridis's cross-examination.

¶ 11     Banco also moved for partial summary judgment on the issue of the damage calculation.

Specifically, Banco argued that damages should be based on the difference between the contract price of the medallions and the value of the medallions at the time of the breach of contract. In response, Santorini argued that damages should be based on the difference between the contract price of the medallions and the value of the medallions at the time of trial. In January 2011, the trial court granted Banco's motion and held that "damages for breach of contract will be determined as the difference of the contract at the time of breach and the time of contract; no damages based on the price of medallions at trial are allowed."

¶ 12    Banco filed another motion for summary judgment, arguing that Santorini failed to establish the correct measurement and computation of its damages and failed to mitigate its damages. The trial court did not grant that motion, but in June 2011, the court entered the summary determination that if any breach of contract occurred, it occurred no later than the date Santorini filed its complaint, September 27, 2007.

¶ 13    After a bench trial, the trial court found that Banco had breached the two contracts because it failed to either transfer the medallions or cancel the contracts in writing. The court also found that Banco waived all the provisions of paragraph 6, including the limitation of liability clause, by continuing to work with Santorini to close the sales after the relevant 90-day time periods had lapsed. The trial court also ruled that the proper measure of damages was the difference between the market price at the time Santorini learned of the breach and the contract price, plus any consequential damages less expenses saved as a result of the breach. Although Santorini could have been entitled to lost profits under this measurement, the trial court had previously barred Santorini from seeking those profits as a result of Santorini's repeated failure to comply with discovery requests and the court's orders on the issue of lost profits. The trial court found that Santorini knew of the breach of contract by February 2007. According to the evidence, there were 6,999 medallions in the City of Chicago, and over 2,550 medallions were bought and sold during the 3½-year time period from December 4, 2006, through June 15, 2010. In addition, Santorini's medallion broker had testified that medallions had always been available for buying in the years 2006, 2007, 2008 and 2009. The trial court determined that the average sale price of taxi medallions in Chicago during February 2007 was $66,775. The difference between $66,775 and the $48,000 contract price was $18,775. Accordingly, for the two contracts, Santorini's total damages were $37,550.

¶ 14    Santorini timely appealed.


¶ 15                                II. ANALYSIS

¶ 16    On appeal, Santorini challenges the trial court's summary judgment rulings concerning the preclusion of lost profits and the measurement of Santorini's damages. Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file, when viewed in a light most favorable to the nonmovant, present no genuine issue as to any material fact and show that the moving party is entitled to a judgment as a matter of law. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). We review a trial court's entry of summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 17                                A. Lost Profits

¶ 18      Santorini argues the trial court improperly granted Banco summary judgment on the issue
of lost profits. Santorini contends the trial court erred as a matter of law when it ruled that
Santorini would not be able to provide sufficient evidence at the bench trial of its lost profits
claim. Santorini also argues the trial court improperly weighed the evidence when it made
its summary judgment determination. Santorini contends that lost profits may be recovered
when there are any criteria to estimate them with reasonable certainty and this was not a
situation where there was a complete lack of evidence. Santorini states that there was no
question that it derived income from renting out taxicab medallions and the cancelled checks
and tax returns it produced during discovery, even if deemed incomplete, were sufficient to
create an issue of fact and thereby preclude summary judgment.

¶ 19      Lost profits are allowed when they can be proved with reasonable certainty, but they are
not a proper element of damages where proof of the claimed profits is remote or speculative.
*Vulcan Metal Products, Inc. v. Schultz*, 180 Ill. App. 3d 67, 73 (1989). The plaintiff bears the
burden of presenting competent proof of lost profits from which a reasonable basis of
computation may be derived. *Girsberger v. Kresz*, 261 Ill. App. 3d 398, 410 (1993).

¶ 20      We affirm the trial court's partial summary judgment precluding lost profits damages
because Santorini failed to present proof of any lost profits with reasonable certainty.
Santorini's refusal to comply with the court's discovery order resulted in the July 2009 order
that barred Santorini from relying on any documents and information concerning lost profits
that were requested by Banco but never produced. Specifically, Santorini refused to answer
Banco's interrogatories that asked for Santorini's revenues, expenses and before-tax profits.
Instead, Santorini merely provided its 2006 and 2007 tax returns, which showed losses of
$9,849 and $10,222, respectively, and some random checks for the years 2008 and 2009.
Santorini never disclosed in discovery what those checks were for or what its expenses were
in 2008 and 2009. Furthermore, Santorini never disclosed its variable and fixed expenses at
any time.

¶ 21      We review a trial court's decision to exclude or admit evidence for an abuse of
discretion, which occurs where no reasonable person would take the view adopted by the
court. *Kim v. Mercedes-Benz, U.S.A., Inc.*, 353 Ill. App. 3d 444, 452 (2004). Furthermore,
the imposition of a sanction for the violation of a discovery rule or order, provided by Illinois
Supreme Court Rule 219(c) (eff. July 1, 2002), falls within the discretion of the trial court.
*Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 68 (2007). When imposing sanctions, the trial
court must consider the surprise to the adverse party, the prejudicial effect of the witness's
testimony, the nature of the testimony, the diligence of the adverse party, the timeliness of
the objection, and the good faith of the party seeking to offer the testimony. *Nedzvekas v.
Fung*, 374 Ill. App. 3d 618, 620-21 (2007). No single factor is determinative, and each case
presents a unique factual situation that the court must consider. *Id.* at 621.

¶ 22      On appeal, Santorini does not dispute that it failed to comply with the trial court's
discovery order. We find no abuse of discretion in either the trial court's July 2009 discovery
sanction order, or its July 2010 ruling that barred Santorini's witness from testifying from

memory about Santorini's expenses, income, and profits. To have allowed such testimony would have permitted Santorini to circumvent the July 2009 discovery sanction order and severely prejudiced Banco in its cross-examination of Santorini's witness.

¶ 23 Santorini's discovery sanction resulted in its inability to present evidence that would show with reasonable certainty the specific portion of its claimed lost profits that was caused by Banco's conduct. There was no method to calculate lost profits because Santorini did not and, due to the discovery sanction, could not provide the information necessary to make that calculation. Contrary to Santorini's assertion on appeal, the trial court did not improperly weigh the evidence because there was no evidence of lost profits to weigh. Because Santorini did not and could not present evidence of lost profits, there was no genuine issue of material fact concerning lost profits and the trial court properly granted Banco partial summary judgment by precluding lost profits damages.

¶ 24                                    B. Damage Calculation

¶ 25 Santorini argues the trial court's damage calculation was erroneous as a matter of law. Santorini contends the trial court made an erroneous legal determination that damages should be measured as the difference between the contract price of medallions and the price of the medallions at the time Banco breached the contract, which was February 2007. Santorini complains that the trial court's award denied Santorini the full benefit of its bargain with Banco and deprived Santorini of the increased value of the medallions at the time of trial in December 2011. According to Santorini, when the trial court set February 2007 as the date to use for the damage calculation, the court failed to consider the fundamental purpose of contract damage awards and failed to place Santorini into the position it would have been in if Banco had not breached the contracts. We disagree.

¶ 26 The measure of damages for breach of contract is the amount that will compensate the aggrieved party for the loss "which either fulfillment of the contract would have prevented or which the breach of it has entailed." *LeFevour v. Howorka*, 224 Ill. App. 3d 428, 430-31 (1991). "The purpose of damages is to put the nonbreaching party into the position he or she would have been in had the contract been performed, but not in a better position." *Walker v. Ridgeview Construction Co.*, 316 Ill. App. 3d 592, 596 (2000). "In determining which measure of damages to use, the trial court must examine the exact interest harmed." *Gvillo v. Stutz*, 306 Ill. App. 3d 766, 770 (1999). "Compensation awarded in a breach of contract action should not provide plaintiff with a windfall." *Walker*, 316 Ill. App. 3d at 596.

¶ 27 "It has long been the law in Illinois that the measure of damages in a breach of contract for the sale of personal property where the article is one obtainable in the market, is the difference between the contract price and the market price at the time of the breach." *Quad County Distributing Co. v. Burroughs Corp.*, 68 Ill. App. 3d 163, 165 (1979) (citing *Loescher v. Deisterberg*, 26 Ill. App. 520, 523 (1887)). When a breach has occurred, the buyer has the right to treat the contract as rescinded and to go into the market and purchase the article at its merchantable value, and then he has the right to recover the difference in the price which he was thus compelled to pay, with interest on the difference which he has paid. *Slueter v. Wallbaum*, 45 Ill. 43, 45-46 (1867).

¶ 28　　"The so-called avoidable consequences doctrine requires one injured by a breach of contract to use all reasonable means to minimize his damages." *Ashe v. Sunshine Broadcasting Corp.*, 90 Ill. App. 3d 97, 100 (1980); *Hutchison Grocery Co. v. Louisville & Nashville RR. Co.*, 230 Ill. App. 291, 296 (1923). Nevertheless, in order to recover, it is not essential that the buyer must purchase the article after the breach occurs, and, if he does not, then the true measure of damages is the difference between the contract and the market price at the time of the breach. *Slueter*, 45 Ill. at 46-47. See also *Benj. Harris & Co. v. Western Smelting & Refining Co.*, 381 Ill. 443, 449 (1942) (citing Ill. Rev. Stat. 1941, ch. 121½, ¶ 67(2) (which provided that when there is an available market, in the absence of special circumstances, the measure of damages is the difference between the contract price and the market or current price at the time the goods should have been delivered)). This rule, however, is not applicable if the buyer cannot obtain the article purchased in the market and resort must be had to other elements of value. *Loescher*, 26 Ill. App. at 523. If the article cannot be obtained in the market or elsewhere, the measure of damages is the actual loss the buyer has sustained. *Id.*; see also *Benj. Harris & Co.*, 381 Ill. at 450 (when there is no market or current price available, "then the actual value must be determined by the best evidence available, and this being ascertained, the measure of damage is the difference between the contract price and the value of the thing sold, at the time and place of delivery").

¶ 29　　Illinois's Uniform Commercial Code is in accord with the above case law and provides that the buyer may cover by making in good faith and without any unreasonable delay any reasonable purchase in substitution for the items due from the seller. 810 ILCS 5/2-712(1) (West 2010). Cover, moreover, is not a mandatory remedy for the buyer, who is always free to choose between cover and damages for the nondelivery. "[T]he measure of damages for non-delivery by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages *** but less expenses saved in consequence of the seller's breach." 810 ILCS 5/2-713 (West 2010).

¶ 30　　Santorini claims it is entitled to damages calculated as the difference between the medallions' contract price of $48,000 each and the increased market price of the medallions at the time of the December 2011 bench trial. The trial court, however, made the partial summary judgment determinations that Santorini's damages would be based on the medallions' prices at the time of breach, and the breach of contract could not have occurred after Santorini filed its complaint for breach of contract. After the bench trial, the trial court concluded, based on the telephone conversations between counsel for the parties, that the contract was breached in February 2007. In order to establish the price of medallions in February 2007, the trial court referred to the evidence concerning the City of Chicago's medallion transfer history for the month of February 2007, which recorded many medallion sales for that month. The trial court discarded three sales that were abnormally low and then averaged the remaining sales for an average market price of $66,775 per medallion. The difference between that average price and the $48,000 contract price was $18,775, which was multiplied by two for the two contracts for total damages of $37,550. We find no error in the trial court's measure of damages for this breach of contract involving the sale of personal property that was available for purchase in the market.

¶ 31    To support his assertion that his damages should be measured by the price of medallions at the time of trial, Santorini cites *American National Bank & Trust Co. of Chicago v. Erickson*, 115 Ill. App. 3d 1026 (1983), *Mercantile Holdings, Inc. v. Keeshin*, 261 Ill. App. 3d 546 (1993), and *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751 (1999).

¶ 32    *Erickson*, 115 Ill. App. 3d 1026, which involved a complaint that sought repayment for a loan of stock, is distinguishable from the instant case. In *Erickson*, the parties' contract specifically provided that when the borrowed stock was returned, the loaning party would be placed in exactly the same position he would have been in had he not loaned the stock. *Id.* at 1028. Based on that contract language, the appellate court affirmed the trial court's damage award, which was based on the value of the loaned stock at the time of judgment. *Id.* at 1030. The appellate court stated that a lesser award would have enabled the defendants to benefit from breaching the agreement. Here, in contrast, the contract at issue involved the sale of personal property, not the loan of stocks. Moreover, whereas the parties' contract in *Erickson* set forth the parties' own measure of damages in the event of a breach, Santorini's contract did not contain any similar provision concerning damages.

¶ 33    Santorini's reliance on *Mercantile Holdings, Inc.*, 261 Ill. App. 3d 546, is also misplaced because that case, like *Erickson*, did not involve the buying or selling of goods or securities. In *Mercantile Holdings, Inc.*, a lender loaned the debtors money that was secured by one debtor's stock in a financial corporation. *Id.* at 547. Thereafter, a company entered into an assignment agreement with the debtors to obtain a beneficial interest in a land trust; however, the company failed to comply with the terms of the assignment agreement that required the company to repay the indebtedness of the debtors to the lender. *Id.* at 547-48. As a result, the lender sold the one debtor's stock, which the lender had been holding as collateral, applied the proceeds to the indebtedness, and sued the debtors and the assignee company. *Id.* at 548. The debtors then counterclaimed against the assignee company for breach of the assignment agreement. *Id.*

¶ 34    Concerning the debtors' counterclaim, the *Mercantile Holdings* court held that the proper measure of damages under those circumstances was the highest value of the stock between the date of the breach and the date that the judgment was entered, plus any lost dividends. *Id.* The court stated that because the debtor had been deprived of certain stock that she already owned before the assignment agreement was entered into, it would have been unreasonable and unfair to expect her to purchase other securities in order to mitigate losses caused by the assignees' breach of contract. *Id.* The facts and contracts at issue in *Mercantile Holdings, Inc.* are nothing like the facts and contracts in the instant case. Santorini was not deprived of medallions it already owned and its contracts with Banco involved the sale of taxicab medallions.

¶ 35    Similarly, *Nilsson*, 313 Ill. App. 3d 751, does not help Santorini because that case involved a breach of contract action by the borrower against the bank, where the borrower had to sell stock he owned to repay the loan after the bank's premature demand for payment. Under those circumstances, the court, citing *Erickson* and *Mercantile Holdings, Inc.*, held the proper measure of damages was one that placed the injured party in the same position at the time of judgment as he would have been had the contract been performed. *Id.* at 760. As discussed above, the instant case is nothing like *Erickson* and *Mercantile Holdings*.

¶ 36                                    III. CONCLUSION

¶ 37        For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 38        Affirmed.